IVY KING and others *v.* JESSE W, KINSEY, Ex'r., and others.

It is not necessary to the valid execution of the will of an illiterate person that the same shall be read over to him in the presence of the attesting witnesses. Upon proof of the actual execution, the law presumes knowledge of the contents, and the *onus* of proving to the contrary falls upon the party alleging ignorance thereof.

(*Downey* v. *Murphy*, 1 Dev. & Bat. 82; *Hemphill* v. *Hemphill*, 2 Dev. 291, cited and approved.)

DEVISAVIT VEL NON tried before his Honor Judge *Seymour*, and a jury, at Spring Term, 1875, of the Superior Court of JONES county.

A *caveat* having been entered to the probate of a paper writing, purporting to be the last will and testament of Ivy King, deceased, the cause was transferred to the Superior Court for trial, where the following issue was submitted to the jury:

Is the paper writing offered as the last will and testament of Ivy King, the last will and testament of the said Ivy King?

The evidence submitted to the jury was as follows:

Stephen W. Noble testified, that the signature as a subscribing witness to the will, was his. He saw Ivy King sign, and heard him say it was his last will and testament. He signed it at his request. That Nunn, the other subscribing witness, and King were present. Ivy King was of sound and disposing memory, but he could not read or write. He did not recollect that the will was read over in the presence of the testator.

Henry S. Nunn, the other subscribing witness testified that the signature as witness was his. He signed it in the presence and at the request of the testator. The testator was of sound and disposing memory. He was also a witness to the first codicil, and the signature thereto was his.

Stephen W. Nodles having been recalled, testified that he was a witness to the first codicil. He signed in the presence of other witnesses and at the request of the testator. He saw the testator sign it. He wrote the codicil himself, according to the instructions of the testator, and thinks at his direction. The testator was at the time, of sound memory.

J. J. Whitehead testified, that he wrote the second codicil, at the request, and according to the instructions of the testator, and signed it as a witness.

The propoundants then asked the witness: Was the will read over to the testator by you? The *caveators* objected to the question. The objection was overruled by the court and the witness answered: I did not read the will, I read the codicil. I think I am certain the testator told me the contents of the will. He got the will and gave it to me. He said he wanted the property insured so that his illegitimate child (the devisee) could get the benefit of it if he were burned. He said he had given the property to the child in question. The testator was of sound mind.

William Irwin proved his signature to the second codicil as a witness.

Henry L. Nunn having been recalled, stated: That the will was not read over to the testator at the time of the signature.

The defendants introduced no evidence.

His Honor charged the jury: "That the will need not have been read over to the testator at the time of its execution. It is sufficient if the jury believe from the evidence that the contents were known to him. That the evidence that he had the will in his possession and requested witnesses to sign it, and the testimony of Whitehead, that the testator stated to him that he devised his property to his illegitimate child, and that he had a codicil drawn by his own instructions or direction relating intelligibly to the will, are all circumstances tending to show that he knew the contents of the will. There is no opposing evidence."

The counsel for the defendants then requested the court to charge the jury :

1. That there is no evidence that Ivy knew of the contents of the will.

2. That if the jury believe that the testator knew of the contents of the codicil, and not of the will they should find for the plaintiff.

3. That the republication of the codicil was no evidence that the testator intended to publish the will.

4. That republication of the codicil was only evidence that the testator knew of the contents of the will.

5. That there is no evidence that the will was ever read over to the testator, and that if he could not read, it is not his will unless it was read over to him.

The special instructions were refused by the court.

The jury returned a verdict in favor of the propoundants and judgment was rendered in accordance therewith, whereupon the *caveators* appealed.

*Isler*, for the appellants.
*Green* and *Haughton*, contra.

SETTLE, J. The execution of the paper writing, purporting to be the last will and testament of Ivy King, and also of the two codicils, was duly proved by the subscribing witnesses thereto. The objection to the validity of this paper, as a will, is that no one proves that it was ever read over to the testator, who could neither read nor write. Was this necessary ? This is not an open question, having been fully discussed and decided by this court adversely to the views of the caveators, in the cases of *Downey* v. *Murphy*, 1 Dev. & Bat. 82, and *Hemphill* v. *Hemphill*, 2 Dev., 291. In the one it is held, "where the capacity of a testator is perfect, his knowledge of the contents of his will is presumed from the fact of execution."

In the other; " It is not necessary to the valid execution of the will of a blind or illiterate person, that it should be read over to him in the presence of the attesting witnesses. The fact that a will was not read over to the testator, is evidence to be left to the jury of his incapacity or of undue influence, or of fraud. But upon proof of the due execution of a will, the law presumes the testator to have been aware of its contents, and the *onus* of proving the contrary is thrown upon him who alleges it." Not only is this true of wills, but the general proposition is said to be correct, that the execution of every written instrument, by every man having competent intellectual capacity, is evidence in law that he knew its contents, and binds him.

In this instance there is nothing in the evidence to rebut this presumption of law. On the contrary there is much to support it.

The conversations of the testator, with some of the subscribing witnesses, at the time of executing the two codicils, go far to show that he had a full and perfect knowledge of the contents of the paper, which he published as his will.

PER CURIAM. Let this opinion be certified. The judgment of the Superior Court is affirmed.