# LIPPHARD v. HUMPHREY.

## ERROR TO AND APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

### No. 188.   Argued March 20, 1908.—Decided April 6, 1908.

Inability to read does not create a presumption that a testator does not know the contents of a paper declared by him to be his last will and duly executed as such.

There is a presumption that the testator does know the contents of a will properly executed, which, while not conclusive, must prevail in the absence of proof of fraud, undue influence or want of testamentary capacity, even where testator's inability to read is proved.

In the absence of proof of want of testamentary capacity at the date of the will, declarations of the testator as to the contents thereof are inadmissible to prove lack of knowledge of such contents.

28 App. D. C. 355, affirmed.

LORAINE LIPPHARD, of the District of Columbia, died December 9, 1903, leaving a paper writing purporting to be her last will and testament, bearing date April 27, 1898, duly attested by three witnesses, and naming Rev. Mr. Meador as executor.

Decedent left surviving her as her next of kin and sole heirs at law her husband, Adolph F. Lipphard, Sr.; three sons, named John, William A. and Adolph F. Lipphard, Jr.; two daughters, named Sophia L. Hellen, born Lipphard, and Capitola L. Anderson, born Lipphard; sixteen grandchildren, four of whom were infants under the age of 21 years. All the other of her heirs and next of kin were of lawful age.

Decedent's property consisted of a small quantity of personal property valued at $350 and some real estate valued at $10,000.

The husband, Adolph F. Lipphard, Sr., and two of the sons, William A. and Adolph F. Lipphard, Jr., filed a caveat to the probate of the will. All of the other next of kin and heirs at law became parties in one way or another. Before the issues were framed on the caveat the Rev. Mr. Meador departed this life. Thereupon decedent's daughters, Capitola L. Anderson

and Sophia L. Hellen, beneficiaries under the writing, petitioned the court for leave to propound said paper writing as and for the last will of decedent, and an order was passed by the court below authorizing this to be done. Thereafter a decree was passed framing issues upon the caveat to be tried by a jury. The issues were five in number and were as follows:

"1. Was the paper writing dated April 27, 1898, the last will and testament of said Loraine Lipphard?

"2. Was the said writing executed and attested in due form, as required by law?

"3. At the time of the execution of said paper writing, was the said Loraine Lipphard of sound and disposing mind and capable of making a valid deed or contract?

"4. Was said writing procured by fraud or undue influence, practiced upon her by any person or persons?

"5. Was the signature of the said Loraine Lipphard procured by force exercised upon her by any person or persons?"

Barnard, J., presiding at the trial of the issues, directed the jury to find the third, fourth and fifth issues in favor of the caveatees, on the ground that the evidence was insufficient to warrant the jury in finding a verdict thereon in favor of the caveators. The first and second issues were submitted to the jury with instructions by the court to the effect that unless the jury believed that the contents of the paper were known to testatrix at the time of execution, they should find for the caveators. If, however, they should find from the evidence that testatrix did know the contents of the paper and did sign the same by her mark in the presence of witnesses, who signed the same as witnesses in her presence, the verdict should be in favor of the caveatees. The jury found the issues in favor of the caveatees, and the will was accordingly admitted to probate and record May 3, 1906.

From this decree the caveators appealed to the Court of Appeals of the District of Columbia, which affirmed the decree of the Supreme Court of the District (28 App. D. C. 355), and thereupon the case was brought to this court.

The paper writing in controversy was witnessed by three credible witnesses, all of whom testified as witnesses for the caveatees.  From their testimony it appeared that on the twenty-seventh day of April, 1898, Mrs. Loraine Lipphard brought the writing to the office of Miss Parker, one of the attesting witnesses, with whom she had long been acquainted, and told her that it was her last will and testament, and that she wanted it attested by three witnesses.  Two other witnesses with whom she was also acquainted, one of them for forty years, were procured, and all three being present, testatrix declared the paper writing to be her will and signed it by her mark thereto in the presence of all the witnesses, and they signed their names thereto as attesting witnesses in her presence.  The testatrix was at the time of sound mind and capable of making a valid deed or will.  The will was not read in the presence of the witnesses, and after the testatrix had subscribed her "mark" and the will had been witnessed, it was handed to her and she took it away with her.  After Mrs. Lipphard's death the will was produced by Rev. Mr. Meador and given by him to an attorney, who lodged it in the office of the register of wills.

Evidence was adduced on the trial on behalf of the caveators that Mrs. Lipphard could not read or write; that she was a licensed midwife and had a great number of cases; that the title to the real estate devised by the will was originally in her husband; that in March, 1857, he put a trust on the property, and it was subsequently sold thereunder; that he afterward took title to the property and again it was sold, and then the title was taken in the wife's name.  The husband's testimony tended to show that he was improvident.  Testatrix was an energetic woman and a good wife.  Part of the property when purchased was vacant land.  In 1894 this land was improved by two houses.  Testatrix made the contract for the erection of these houses and attended to the building of the same.  The husband and wife had lived happily together for sixty-five years.

The will devised and bequeathed the entire estate of the testatrix to the Rev. Chastain C. Meador in trust: (1) To pay all funeral expenses and debts; (2) For the use of her husband, Adolph F. Lipphard, during his life; (3) To pay the expenses of said husband's last illness and funeral; (4) Upon the death of the husband to divide the same among children named, according to the directions therein contained; the trustee also being appointed executor. The real estate consisted of three lots, two of which were specifically devised to the two daughters.

*Mr. Chapin Brown,* with whom *Mr. Charles H. Bauman* and *Mr. J. P. Earnest* were on the brief, for plaintiffs in error and appellants:

When once the foundation has been laid by proving that the alleged testator was illiterate, and could not read or write or sign his name, or that it was doubtful from any other cause whether he knew the contents of the will, the declarations of the alleged testator are admissible in evidence to show whether he knew or did not know, the contents and provisions of the alleged will. *Harleston* v. *Corbett,* 12 Rich. (S. C.) 604; *Watterson* v. *Watterson,* 38 Tennessee (1 Head), 1; *Cox* v. *Cox,* 4 Sneed (Tenn.), 81; *Rollwagen* v. *Rollwagen,* 63 N. Y. 504; *Selden* v. *Myers,* 20 How. 506; *Adams* v. *Norris,* 23 How. 353; Jarman on Wills, 6th ed., Vol. 1, p. 47; Underhill on the Law of Wills, Vol. 1, p. 201.

The evidence which the caveators offered to produce tending to show that the alleged testatrix did not know the contents of the instrument alleged to be her will, is competent and should have been admitted. *Waterman* v. *Whitney,* 11 N. Y. 157; *Barbour* v. *Moore,* 4 App. D. C. 535; *Olmstead* v. *Webb,* 5 App. D. C. 30; *Adams* v. *Norris,* 23 How. 353; *Thompson* v. *Updegraff,* 3 W. Va. 629 (cited in the *Holt case*); *Couch* v. *Eastman,* 27 W. Va. 796 (cited in the *Holt case*); *Cranmer* v. *Anderson,* 11 W. Va. 582; *Jarretts* v. *Jarretts,* 11 W. Va. 584; *Mathews* v. *Warner,* 4 Ves. 186; *Pemberton* v. *Pemberton,* 13 Ves. 290; *Norris* v. *Sheppard,* 20 Pa. St. 275; *Neel* v. *Potter,* 40 Pa. St. 283; *Storrett* v. *Douglass,* 2 Yeates, 46; *Trumbull* v.

*Gibbons,* 2 Zab. 140; *Crispell* v. *Dubois,* 4 Barb. 399; *Stewart's Exr's* v. *Lispenard,* 26 Wend. 261; *Throckmorton* v. *Holt,* 180 U. S. 552, discussed and distinguished from the case at bar.

*Mr. B. F. Leighton* and *Mr. C. Clinton James* for defendants in error and appellees.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The contention of appellant is that as testatrix could not read, and as the will was not read to her at the time of its execution, it was therefore to be presumed that she did not know the contents of the will when she executed it, or that the jury ought not to have been allowed to presume from the evidence produced before them that the testatrix had knowledge of the contents of the will.

Mrs. Lipphard brought the will with her to the office of one of the attesting witnesses for the purpose of execution, and after its execution took it away with her, and at her death it appeared in the possession of the Rev. Mr. Meador, the executor named therein, and by whom it was propounded for probate and record. She declared to the witnesses that it was her will, and requested them to attest it as such; and its provisions were reasonable and natural. She was shown to be a woman of intelligence and business capacity; she was in bodily and mental health and vigor when the instrument was executed; and there was no suggestion of fraud or undue influence in the case.

In these circumstances the jury properly concluded that the testatrix knew the contents of the will at the time of its execution, and the court might well have directed such finding, unless the bare fact of the inability of testatrix to read raised a legal presumption that she did not possess that knowledge, and the absence of the reading of the will to her at that time was fatal. But we know of no such presumption as mat-

ter of law, and on the contrary, the presumption where a will is properly signed and executed is that the testator knows the contents. Where there is evidence of the practice of fraud or of undue influence, affirmative proof of knowledge of the contents may be necessary, but not so in any other case, simply because of a presumption arising from inability to read. *Taylor* v. *Creswell,* 45 Maryland, 422, 431; *Vernon* v. *Kirk,* 30 Pa. St. 224; *King* v. *Kinsey,* 74 N. C. 261; *Hoshauer* v. *Hoshauer,* 26 Pa. St. 404; *Clifton* v. *Murray,* 7 Georgia, 565; *Doran* v. *Mullen,* 78 Illinois, 342; *Walton* v. *Kendick,* 122 Missouri, 504; *Nickerson* v. *Buck,* 12 Cush. 341; *Guthrie* v. *Price,* 23 Arkansas, 407.

In the latter case testatrix's name was subscribed to the will, and between her Christian and surname was her mark in the form of a cross. The attesting witnesses signed the will at her request, in her presence, and in the presence of each other. She produced the paper writing for them to attest and declared that it was her will, and that she desired them to witness it as such. She did not write her name, but made her mark to the paper. It was not shown who did write her name to the will. It was not written by either of the witnesses, nor in their presence. Testatrix could not read, and the will was not read to her in the presence of or to the knowledge of the witnesses. The trial court instructed the jury, in effect, that notwithstanding the will was executed in accordance with the formalities prescribed by the statute, yet it being shown that the testatrix could not read, the will was invalid, unless it was proved that it was read to her and that she was informed as to its contents. After a review of the authorities, the Supreme Court of Arkansas held such instruction to be erroneous, and Chief Justice English, in the concluding part of his opinion, said:

"It was proven that she could not read, and it was not shown that the will was read to her at the time it was executed, but it may have been before. She produced the will herself, declared it to be her will, asked the witnesses to attest it as

such, signed it by making her mark. She was a woman of good sense, particular about her business transactions, and manifested her usual soundness of mind at the time. It is not shown that she was laboring under any feebleness of mind from disease, or approaching dissolution. The provisions of her will appear to be reasonable. It is not shown that any imposition was practiced upon her, or that her sons had any agency in the preparation of the will. It was erroneous for the court to tell the jury as a matter of law that it being shown that she could not read, it was necessary to prove that the will was read to her. They had the right to infer, from all of the circumstances, that she knew the contents of the will, though, as shown by the authorities above quoted, in determining whether there was fraud or imposition in the execution of the will, the fact that she could not read, and that the will was not read to her, at the time she signed it, were circumstances to be considered by the jury."

True, the presumption that a party signing a will by mark, or otherwise, knows its contents, is not a conclusive presumption, but it must prevail in the absence of proof of fraud, undue influence, or want of testamentary capacity attending the execution of the will. In the present case there was no attempt to show that the testatrix was not capable of making a valid deed or contract at the date of making the will; on the contrary, the evidence showed that she was a woman of energy, capacity and intelligence. Nor was any proof offered of fraud or undue influence in the production of the will. Mrs. Lipphard brought the will, as we have said, to Miss Parker's office for the purpose of having it executed; she declared to the attesting witnesses the paper to which she made her mark to be her last will and testament. She was a person of sound mind at the date of the will, and it was executed and attested in the manner required by statute.

It is obvious that the verdict of the jury ought not to be disturbed and a new trial allowed, unless some reversible error was committed in the course of the trial, and appellants insist

that such error existed in the exclusion of evidence of declarations alleged to have been made by the testatrix prior and subsequent to the date of her will as to how she intended to dispose, or had disposed, of her property.

Decedent's husband testified that his wife talked to him often, prior to the date of the will, as to what she intended to do with her property after her death, and that they talked the matter over after the date of the will. He was asked what she said, but objection to the question was sustained. Appellants did not state what they expected to prove by the husband.

Albert R. Humphrey, another witness, testified that he had a conversation with Mrs. Lipphard about two years before she died. He was asked the following questions:

"Did she tell you how she had left her property, or how she was going to leave it? A. Yes, sir.

"What did she say to you in reference to that matter?"

To which caveatees objected, and the court sustained the objection. Counsel for appellants stated that he desired to show by this witness that testatrix denied leaving the property as mentioned in the will, this being more than three years after the will was executed.

William A. Lipphard, one of the caveatees, was asked a similar question, and, upon objection, the court made a like ruling, excluding the evidence. He said that he had a conversation with her in reference to her will just before her death; that she told him how she had left her property.

Mrs. Sarah Lipphard, the wife of one of the caveatees, testified that eight or ten weeks before decedent died she asked her if she had made a will, and then she was asked the following question:

"What did she say in reference to what was in her will and what she had done with her property, if anything?"

On objection by the caveatees the evidence was excluded. Counsel for caveators stated to the court that he desired to show by this witness that testatrix had denied to the witness

that she had left her property as and in the manner stated in the will.

Appellants' brief asserts that the offer was made in support of the issue of want of mental capacity in the testatrix at the time she made her will.

In *Stevens* v. *Vancleve*, 4 Wash. C. C. 262, 265; *S. C.*, 23 Fed. Cases, 35, Mr. Justice Washington said that declarations of a deceased, prior or subsequent to the execution of a will, were nothing more than hearsay, and that there was nothing more dangerous than their admission, either to control the construction of the instrument or to support or destroy its validity.

In *Throckmorton* v. *Holt*, 180 U. S. 573, Mr. Justice Peckham, speaking for the court, expressed the opinion, after much consideration, that the principles upon which our law of evidence is founded necessitated the exclusion of such evidence, both before and after the execution, saying:

"The declarations are purely hearsay, being merely unsworn declarations, and when no part of the *res gestæ* are not within any of the recognized exceptions admitting evidence of that kind.

"Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in those cases his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact.

  *       *       *       *       *       *       *       *

"When such an issue (one of mental capacity) is made it is one which relates to a state of mind which was involuntary, and over which the deceased had not the control of the sane individual, and his declarations are admitted, not as any evi-

dence of their truth, but only because he made them, and that is an original fact from which, among others, light is sought to be reflected upon the main issue of testamentary capacity.

\* \* \* \* \* \* \* \*

"It is quite apparent, therefore, that declarations of the deceased are properly received upon the question of a state of mind, whether mentally strong and capable, or weak and incapable, and that from all the testimony, including his declarations, his mental capacity can probably be determined with considerable accuracy."

And see *In re Kennedy*, 167 N. Y. 163, 176. In *Shailer* v. *Bumstead*, 99 Massachusetts, 123, it was ruled:

"Where a foundation is laid by evidence tending to show a previous state of mind, and its continued existence past the time of the execution of the will is attempted to be proved by subsequent conduct and declarations, such declarations are admissible, provided they are significant of a condition sufficiently permanent, and are made so near the time as to afford a reasonable inference that such was the state at the time in question."

In the present case no foundation was laid for the admission of this evidence. Not a syllable of testimony was adduced by appellants to show want of testamentary capacity at the date of the will. For aught the record shows, she retained her mental powers up to the time of her death, which took place five years and eight months after making her will.

As we have said, appellants did not state what they expected to prove by decedent's husband, nor what they expected to prove by the evidence of William A. Lipphard. This witness testified on cross-examination that he did not know his mother had made a will until after her death. In his direct examination he stated that she told him, in a conversation had with her a week before she died, how she had disposed of her property by her will.

And so the offer to prove by Albert R. Humphrey, that the testatrix two years prior to her death, and more than

three years after the execution of the will, denied giving her property. as provided by her will, or the similar offer made with respect to the witness Mrs. Sarah Lipphard, wife of Adolph Lipphard, as to alleged conversations with decedent eight or ten weeks before her death, were at a period too remote to throw any light upon the mental condition of the testatrix at the time the will was made.

There was no evidence whatever of mental incapacity and this particular evidence was too remote to justify any reasonable inference to that effect, and if there was no lack of mental capacity, then this evidence would have no tendency to show that she did not have knowledge of the contents of the will when she executed it and declared it to be her last will and testament. Because she may have resisted importunity for information in respect to what she had done, three years after she had made her will, it does not follow that she did not know the contents of the will when she made it. There must be some other proof, some suspicious circumstances, some evidence of fraud or undue influence before evidence of conversations years after the execution of the will should be admitted to show that she did not know what she was doing when she made it.

*Decree affirmed.*