## In re HOSMER'S ESTATE.

### VASSILOS, Respondent, v. ARNOLD, Appellant.

### (196 N. W. 545.)

(File No. 5326. Opinion filed January 4, 1924.)

1. **Appeal and Error—Motion for New Trial—Settled Record—Motions—Failure to Sign Certificate Before Motion for New Trial Not Ground for Striking Settled Record.**

    Where settled record was prepared, and specifications attached, and it was used in hearing of motion for new trial, but through oversight the certificate had not been signed, and immediately after hearing the omission was discovered, and the record was signed in its then present form, motion to strike will be denied.

2. **Wills—Undue Influence—Motions—Jury—Denial of Motion to Withdraw Issue of Undue Influence from Jury Reversible Error.**

    In a will contest, where there was no evidence of undue influence, the denial of a motion to withdraw such issue from the jury was reversible error.

3. **Wills—Evidence—Undue Influence—Evidence Held Not to Make Issue of Undue Influence.**

    In a will contest, evidence that testatrix was of weakened physical condition and that defendant had an opportunity to influence her, was a beneficiary, and showed a disposition to retain the benefits given him, did not make an issue as to undue influence.

**4. Evidence—Hypothetical Questions—Res Gestae—Expert Testimony—Hypothetical Questions Based on Condition Subsequent to Making of Will and Ignoring Testimony Inadmissible.**

Where testatrix, after execution of her will in the daytime, lapsed into complete coma during the evening, hypothetical questions which were based on her condition at least four hours after will was made, ignored the testimony as to her condition when it was made, and were framed so as to represent her condition at that time as a state of coma, were improperly admitted.

Appeal from Circuit Court, Edmunds County; HON. J. H. BOTTUM, Judge.

In the matter of the estate of Florence Hosmer, deceased. Will contest by Georgia Hosmer Vassilos against John W. Arnold. From judgment and order in favor of contestant, proponent appeals. Reversed.

*J. M. Berry,* of Ipswich, and *Danforth & Barron,* of Sioux Falls, for Appellant.

*Beardsley & Henderson,* of Ipswich, and *Williamson, Williamson & Smith,* of Aberdeen, for Respondent.

(2) and (3) To points two and three of the opinion, Appellant cited: In re Elliott's Estate (Wis.), 155 N. W. 110; Gunderson v. Rogers, 152 N. W. 157; Gillette v. McLaughlin, 184 N. W. 277; Bordman's Will, 190 N. W. 355; Beyer v. Lefevre, 186 U. S. 114, 22 Sup. Ct. 765, 46 L. ed. 1080; Eckern v. Erickson, 157 N. W. 1062; Johnson v. Shayer, 172 N. W. 676; Hackett v. Hackett (S. D.), 145 N. W. 437; Speer v. Speer (Ia.), 123 N. W. 176; In re Corson's Estate, Knight v. Aikens (S. D.), 135 N. W. 666; Laflin v. Laflin (Nebr.), 187 N. W. 885; Bales v. Bales (Ia.), 145 N. W. 673; Whitman v. Whitman (S. D.), 184 N. W. 975; Lynn v. Schirber (S. D.), 184 N. W. 987; Johnson et al v. Shaver (S. D.), 17 N. W. 676; Soule v. Henry (Mich.), 163 N. W. 944; In re Gardinier's Estate (Mich.), 164 N. W. 382; Philpott v. Jones (Ia.), 146 N. W. 859; 40 Cyc. 1020.

Respondent cited: Ekern v. Erickson, 37 S. D. 300, 167 N. W. 1062; Johnson v. Shaver, 41 S. D. 585, 172 N. W. 676; Erwin v. Lattin, 29 S. D. 131, 136 . W. 759.

(4) To point four, Appellant cited: Harju v. Allen (Minn.), 177 N. W. 1015; Jones on Evidence, Sec. 371; Hahn v. Hammerstein (Mo.), 198 S. W. 833.

POLLEY, J.  This is an appeal from a judgment setting aside a will.  The property involved formerly belonged to one Capt. Sidney J. Arnold, who died in 1917, leaving the property to his wife, Stella Aronld.  Stella Aronld died on the 10th day of April, 1921, leaving the property to her sister, Florence Hosmer, the testatrix in this case, and who had made her home with Capt. Arnold and his wife, Stella Arnold, for more than 20 years prior to his death.  Florence Hosmer, the testatrix, died on the 20th day of April, 1921, just 10 days after the death of her sister, Stella Arnold, leaving the will in question, whereby she bequeathed and devised all of the property to John W. Arnold, the defendant in this case, and who is the brother of the said Sidney J. Arnold.

The will in question purports to have been executed on Sunday, the 17th day of April, 1921, and the property is variously estimated at $50,000 to $100,000 in value.  The testatrix was 70 or 71 years old at the time the will was executed.  She was a very small woman and very frail, weighing only 80 to 90 pounds.  The contestant is a granddaughter of a brother of testatrix; therefore she is a grandniece of the testatrix.

[1]  Respondent moved to strike out the settled record.  The motion is based on various grounds, only one of which merits consideration, and that is that the settled record was not in fact settled by the trial judge until after the motion for a new trial had been heard and determined.  The facts are that the record was prepared and the specifications of error attached just as it now appears, and it was used on the hearing of the motion for a new trial, but through an oversight on the part of appellant's counsel or of the clerk of courts the judge had not signed the certificate to the record.  This omission was discovered almost immediately after the hearing, and as soon as discovered the record was presented to the trial judge, who signed it just as it was.  No objection was made by respondent to using the record in the shape it was at the time, nor is it claimed that she was prejudiced in any way.  The motion to strike is denied.

In preparing this printed record appellant forgot to include an assignment based on the order overruling his motion for a new trial, and now asks leave to amend his record by adding such assignment.  The request is granted.

The will is contested on three grounds:  First, that the will

was not legally executed; second, lack of mental capacity to make a valid will; and, third, undue influence exercised by the defendant.

[2, 3.] The case was tried to a jury. At the close of the testimony defendant moved the court to withdraw the issue of undue influence from the consideration of the jury. The motion was denied, and such denial is assigned as error. The denial of this motion was error for which alone the judgment should be reversed. There was no evidence of undue influence. There is no evidence in the record that indicates a disposition on the part of the defendant to influence the testatrix in the disposition of her property, and there is no evidence in the record to indicate that testatrix was susceptible to influence, other than her weakened physical condition at the time of the execution of the will. No evidence was offered for the purpose of showing an attempt to exercise any influence over the testatrix. No reference was made at any time during the course of the trial to this issue, and yet, over the objection of the defendant, the court instructed the jury that, if the execution of the will was procured by the exercise of undue influence of the defendant over the mind of the testatrix, the will would be invalid. The jury might have understood that they might infer undue influence from the fact that defendant had an opportunity to influence the testatrix, that he was made a beneficiary of the will, and that he showed a disposition to retain the benefits of the will. These facts do not amount to proof of undue influence. If they did, nearly every will could be set aside on this ground (Gillette v. McLaughlin, 44 S. D. 499, 184 N. W. 277; Petterson v. Imbsen [S. D.], 194 N. W. 842); and mere suspicion of undue influence is not sufficient to take the issue to the jury (Ginter v. Ginter, 79 Kan. 721, 101 Pac. 634, 22 L. R. A. [N. S.] 1024).

Upon the question of mental capacity, it is not disputed by the contestant that the testatrix, prior to her last sickness, was a woman of at least average intelligence. Nor, on the other hand, is it disputed by the proponent that at the time of the execution of the will she was very sick, and in a very much weakened and exhausted condition because of such sickness. For some considerable time she had been suffering from Bright's disease. On Thursday evening, April 14th, her condition became very much worse;

she was "taken very sick," in the language of the attending nurse, and was in a stupor part of the night. On the following morning a physician was called, who visited her several times through Friday and Saturday. The patient continued to grow worse, and on the evening of Saturday the physician became satisfied that uremic poisoning was developing. He informed the patient that he did not think she could recover, and advised her that if she had any business affairs that she wished to attend to it should not be delayed. He administered heart and kidney stimulants, and on the following morning she was better. From Sunday morning to Sunday evening there was no marked change in her condition, though the nurse testified that testatrix continued to grow weaker throughout the day. On Sunday morning testatrix said she knew she was not going to get well, and that she was going to make a will and dispose of her property, and asked the nurse to call the defendant. This request was complied with.

The defendant testified: That he went to testatrix's room. That after some conversation with her she said, "John, I want to make my will; and I want you to get a competent man to do the work." Defendant recommended Frank McRoberts, a lawyer whom he had known many years, and who he said had had extensive experience with probate matters. Testatrix said to send for McRoberts. Defendant went to the telephone and called McRoberts, but did not see testatrix again, nor McRoberts at all, until after the will had been drawn and executed.

McRoberts testified: That in response to the telephone call he went to the house where testatrix was staying, and was admitted to her room. That he had some conversation with her, and that she directed him to prepare a will leaving all her property to John W. Arnold, her brother-in-law. She said that Capt. Arnold, defendant's deceased brother, had spent a lifetime accumulating the property, that he had given her a home and clothed her during the time she had lived with him, and that she wished the property to go back to the Arnold family where Capt. Arnold desired it to go, and where John W. Arnold would carry out his intentions. That he then asked her if she had any relatives to whom she wished to leave anything, or whether she had any special bequests to make, to which she replied, "None whatever; give everything to John W. Arnold." That he then went to his

office and prepared the will just as it appears in this record. That he took it to testatrix and read it over, and explained it to her, and asked her if it was in accordance with her wishes. That she replied, "Yes; it is just as I wanted it drawn." That he then called in three persons to witness the execution of the will. That when the witnesses had arrived the testatrix was given pen and ink with which to sign her name. She made an attempt to write, but said, "I cannot see without my glasses; Nellie [meaning the nurse], where are those glasses?" The glasses were found and given to her. She placed them on her nose, and made a second attempt, and then a third attempt, to write her name, but she was so weak that she could not do it, and, as claimed by plaintiff, succeeded in making only a faint indistinct mark that bears no resemblance to her name. McRoberts then told her that she might make her mark, and this she did. He then asked her the question, "Is this your last will and testament, Miss Hosmer?" to which she replied, "Yes; it is." She was then asked if she wished the three parties present to sign as witnesses, to which she answered, "I do."

This witness' testified that he had not known the testatrix prior to the time he drew the will, and that when he first spoke to her he called her "Mrs. Hosmer"; that she immediately spoke up and said, "I am not Mrs. Hosmer. I have not been married. My name is Miss Hosmer." The foregoing testimony relative to the execution of the will was fully corroborated by the three witnesses present, all of whom testified that the testatrix spoke in a perfectly clear voice, and sufficiently loud to be distinctly heard in any part of the room. These witnesses further testified that at the time McRoberts placed the will before the testatrix, Miss Meyers, the nurse, said, "Miss Hosmer, do you know that this is your will that you are being asked to sign?" to which she replied, "I certainly do." She was then asked, "Do you know its contents?" to which she replied, "I do." The witness then said to her, "Do you know you are willing all your property to John Arnold?" to which she answered, "I certainly do." These witnesses further testified that testatrix appeared to be in the full use of her mental faculties, and that in their opinion she understood all that was being said and done, and fully appreciated the effect of what she was doing. If the testimony of these witnesses is true, there

is not the remotest doubt of the testatrix's mental capacity to make a will, and that she was acting entirely upon her own volition in making it.

It was shown on behalf of contestant that at about 8 o'clock in the evening of the day on which the will was executed testatrix passed into a stupor, that continued all or a greater part of the night, and from which she probably was never again thoroughly aroused, although the attending physician and nurse testified that she talked some and answered questions intelligently the next day, and to some extent on the day following. But on Tuesday evening she passed into a complete coma, and remained in that condition until she died at about 5 o'clock Wednesday afternoon.

[4] To overcome the evidence on behalf of the defendant contestant relied upon the testimony of two professional nurses, neither of whom ever saw the testatrix until at least four hours after the execution of the will, and the expert testimony of three physicians, two of whom never saw the testatrix at all, and the other had not seen her since some time prior to her last sickness. The testimony of the two professional nurses related wholly to the condition of the patient after they saw her, and was therefore of no probative value whatever. The testatrix was dying of uremic poisoning, and, based upon the testimony of the medical experts, she could have been capable of making a will at 4 o'clock in the afternoon and have lapsed into a complete coma by 8 o'clock that evening.

The testimony of the medical experts was in response to hypothetical questions based upon assumed facts as shown by the testimony of the four persons who were present when the will was executed, the attending physician and the two nurses who were called into the case after the will was executed. These hypothetical questions were so framed as to represent the testatrix in a state of coma or complete stupor at the time the will was claimed to have been executed, and of course but one answer was possible. The testimony of the witnesses who were present at the time the will was executed was almost wholly ignored, and the facts relative to the condition of the testatrix from 8 o'clock in the evening of the day on which the will was executed were brought out in great detail. The condition of testatrix four hours after the will was executed and from that time until she died was not

material to any issue in the case, and the objection to these questions in the form they were asked should have been sustained. We believe the rule as stated in Dean v. Seeman, 42 S. D. 577, 176 N. W. 649, relative to hypothetical questions, is sufficiently liberal, but the questions involved in this case went entirely beyond the scope of the facts as they were shown to exist. Defendant's motion to withdraw the testimony of the expert witnesses from the jury should have been granted.

Since a new trial must be granted because of errors of law committed at the trial, it is unnecessary to consider the matter of newly discovered evidence.

The judgment and order appealed from are reversed.

Note.—Reported in 196 N. W. 545. See, Headnote, American Key-Numbered Digest, (1) Appeal and error, Key-No. 655(1), 4 C. J. Sec. 2267 (1925 Anno.); (2) Wills, Key-No. 324(3), 40 Cyc. 1359; (3) Wills, Key-No. 324(3), 40 Cyc. 1322; (4) Evidence, Key-No. 553(1), 22 C. J. Sec. 796.

On effect of unnatural testamentary disposition on question of undue influence, see note in 6 L. R. A. (N. S.) 202 and 22 L. R. A. (N. S.) 1024.