IN RE APPEAL FROM ORDER ALLOWING WILL OF
GUNHILD BAKKE, DECEASED.
APPEAL OF CHRISTINA STENE.[1]

June 20, 1924.

No. 24,033.

**Presumption that blind testatrix knew contents of her will.**

The presumption is that the contents of a properly executed will were
known to the testator. The wills of the blind are no exception. There
being no proof of imposition by fraud or undue influence, a blind
testatrix, in the full possession of her faculties otherwise, will not
be presumed ignorant of the contents of her duly executed and attested
will.

John K. Bakke petitioned the probate court for Goodhue county
for the allowance of the last will of Gunhild Bakke, deceased.
From an order, Erickson, J., admitting the will to probate, Chris-
tina Stene appealed to the district court for that county. On the
second trial of the appeal before Converse, J., he made findings
and affirmed the order of the probate court. From an order deny-
ing her motion for a new trial, Christina Stene appealed. Affirmed.

*Edgerton & Dohs* and *F. M. Wilson,* for appellant.
*Andrew Finstuen* and *Thomas Mohn,* for respondents.

STONE, J.

The will of Gunhild Bakke was admitted to probate in the pro-
bate court of Goodhue county. It was contested by Christina Stene,
a daughter of the testatrix, and she appealed to the district court
where there have been two trials before the same judge. His first
decision was that the will was not sufficiently proven. It was put
upon the ground that, because the testatrix was blind at the time
of the execution of the will, the burden was considered to be upon
the proponents to prove affirmatively that its contents had been
made known to her. Concluding that the decision was wrong, the

[1]Reported in 199 N. W. 438.

learned trial judge ordered a new trial on which he determined that the will was sufficiently proven and should be admitted to probate. The contestant moved for a new trial and the appeal is from the order denying that motion.

The will was executed October 11, 1890. Mrs. Bakke was then about 53 years old and had been a widow since 1885. In that year her husband died seized of 320 acres of land in Goodhue county. It was his farm and 80 acres was the family homestead. He died intestate so that his personal property and real estate descended to his heirs as provided by statute. His widow, the testatrix, took a life estate in the homestead and the fee in an undivided one-third of the other 240 acres. The remainder in the homestead and the fee in an undivided two-thirds of the rest of the farm vested in the 7 sons and daughters. The contestant, Mrs. Stene, received her share.

The farm remained intact notwithstanding this division of ownership and the testatrix continued it as her residence until her death. She devoted considerable attention to its management. There is no question as to her mental capacity and there was no undue influence. The legal foundation upon which this contest is sought to be established is that for many years preceding her death Mrs. Bakke had suffered from a most distressing cancer of the face which had almost destroyed her eyesight. For some time before her will was executed, she had been nearly blind. In addition to that, her hearing was seriously impaired, but there is no question that one talking to her could make her understand by using sufficient voice.

In that situation, it is contended that, in order to establish the will, the burden of proof resting upon the proponents was not satisfied by evidence of mental capacity and due execution of the will. It is urged that, in such a case, there must be in addition affirmative proof that the testatrix knew the contents of the will. In this case, there was no such special proof.

The finding of fact is that "she was of sound mind and free from undue influence; of lawful age and under no restraint; and that

said instrument was by her executed in all respects according to law."

The trial judge stated that he found in the case "no circumstances leading the court to suspect imposition." On the other hand, he said, "everything pointed to a situation as wholly free from imposition as could well be imagined."

One of the subscribing witnesses was dead. The other testified that Mrs. Bakke acknowledged that it was her last will and "that he saw her make her mark." The testatrix had signed the will by proxy, her name having been signed for her by a Mr. Kyllo who was named as the executor, but who predeceased the testatrix by several years. The same witness, Mr. Henkel, testified that he had observed how the testatrix acted; that he had known her well for a long time and that, in his opinion, "she was a very keen woman and understood business matters."

Preliminary to a discussion of the controlling point in the case, it is well to say that we do not regard the fact that the will was submitted to the testatrix for execution by Mr. Kyllo, who was named as the executor, as casting any doubt upon the good faith of his participation in the matter. He got nothing by the will. It is not shown by whom or when the will was drawn. Presumably it was prepared at the direction of the testatrix. There is no suggestion that Mr. Kyllo was other than a trusted friend, selected by Mrs. Bakke as her executor. There is not a circumstance indicating that he had any ulterior motive in bringing about the execution of the will or that he, rather than Mrs. Bakke, dictated its contents. There is nothing in his participation in the transaction even remotely suggesting that Mrs. Bakke was imposed upon.

One argument against the conclusion reached below that there was no imposition is the fact that the appellant, Mrs. Stene, was expressly cut off from participation in the estate. On that subject, the will spoke as follows: "The reason why I do not leave any devise or bequest to my daughter, Christina Stene, is that she is married and that she and her husband have already received what I consider to be her full share of my estate."

Mrs. Stene was married some 10 years before the date of the will. In the strict sense, neither she nor her husband ever received anything from the mother's estate. But there can be no truthful denial of the fact that, at or about the time of her marriage, her father, husband of the testatrix, conveyed to appellant's husband a quarter section of land in Swift county. It was a gift. It is claimed that it had but little value. But it had some value, and none of the other children ever received anything by way of an advancement from either of their parents. Therefore, it is not for those who survive her to say that Mrs. Bakke's expressed opinion that Mrs. Stene and her husband had received what she considered to be "her full share of my estate" was other than a fairly accurate interpretation of the situation. Mr. Stene had received a substantial donation from the family property of his wife's parents.

With people in the circumstances of the Bakkes, it is not the usual thing for a husband and wife, particularly the survivor of them, to make the technical distinction between their respective properties that is here sought to be made between the estate of Mrs. Bakke and that of her husband. The estate she had, which may have been built up as much by her efforts as his, came from him by operation of law on his death. The record puts beyond question the propriety of the conclusion reached by the learned trial judge that there were no circumstances indicating imposition.

The fact that the daughter who remained at home, caring for her mother, received a special legacy equivalent to $1.50 per week during the period of her services, is a circumstance strengthening that conclusion. The propriety of such a special provision in favor of that daughter is too obvious. There is nothing about it to suggest overreaching. The probability is that the allowance was altogether too small to compensate for the services referred to.

Too often the one child who remains to the last with an aged parent, rendering a service which only love can render, is not recompensed sufficiently or at all. That Mrs. Bakke's will did not overlook the claims of this daughter is substantial evidence of its genuineness.

This is not a case of an "inofficious, harsh and unjust" will nor of a "grossly unequal and unjust" distribution of property. Com-

pare Tyner v. Varien, 97 Minn. 181, 106 N. W. 898, and cases cited. On the contrary, Mrs. Bakke's will seems to have been entirely just to all concerned. If contestant could prevail, all she would get is an undivided 1/7 of 80 acres of land. It was no violent assumption, therefore, on the part of the testatrix, that contestant had already received the equivalent of her share of the family property. Obviously, that is what she meant by the declaration that Mrs. Stene and her husband had received their share of her estate.

Going now to the controlling question of laws as to the amount and character of proof necessary for the admission to probate of the will of a blind testator, we start with our statute concerning the execution of wills, sections 7268-7271, G. S. 1913. Our attention has been invited to no decision of this court on the subject, other than Benrud v. Anderson, 144 Minn. 111, 174 N. W. 617. It is persuasive but not controlling. The precise question now before us was not involved. See also the somewhat related case of Baxter v. Baxter, 136 Minn. 59, 161 N. W. 261, and the authorities cited.

It is significant, to start with, that the statute makes no special provision concerning the wills of blind persons or others partially disabled. Primarily, the law is concerned with the presence of testamentary capacity and the absence of undue influence and fraud. There is no question of the testamentary capacity of a blind person in the full possession of his normal faculties otherwise. If as to such testators, it had been the legislative intention to make additional requirements, the statute would not have been silent as it is concerning them. We cannot add anything to it.

Another practical consideration is that to adopt the argument for appellant would be to put a very substantial obstacle in the way of wills of the blind. Such a will would become inoperative in the event of the death or incompetency of the witnesses capable of proving that its contents had been known to the testator. We perceive no reason for so handicapping the testamentary efforts of blind but otherwise competent testators. No one considers their deeds subject to any such disability. Why impose it upon their wills?

Difficulties of proof may embarrass and attend with difficulty their application, but do not change the rules of evidence. Certainly, they do not remove from consideration the bases which judicial conclusion seeks and frequently finds in the conventional and long-established presumptions of our law. Nothing is better established than that due proof of a properly attested will raises the presumption, not conclusive but rebuttable, that its contents were known to the testator at the time of execution. The proof raised that presumption as to Mrs. Bakke's will and there is nothing to rebut it.

The argument contra is that in the case of a blind testator, the presumption of knowledge of contents arising from due attestation should not apply. Why? Simply because it is easier, to impose upon and deceive the sightless. That is a pertinent consideration but too much at large. It is of no weight and without application in a case where there is no proof of imposition by deceit or otherwise. There must be some such proof before there is room for consideration of the ease with which a blind testator can be misled. Here there was none.

Neither fraud nor undue influence is presumed from the mere fact that the supposed victim would have been an easy one. The initial presumption, in the absence of such legally significant circumstances as those of confidential relation, is always against fraud, undue influence and the like. It applies to the acts of the blind— the only difference being not in the rule controlling proof but in the ease with which it may persuade conviction because of the susceptibility of the sightless to imposition.

In that connection it is not to be lost sight of that the loss of one faculty sharpens the others and renders apprehension more acute. How are we to know that, because of her blindness, this testatrix did not take special precaution against imposition? How can we say that the unknown draftsman of her will was not selected because of her special confidence in him? Why should we hold, in utter ignorance of the truth, that, contrary to usual custom, the scrivener did not with meticulous care go over the will with Mrs. Bakke? It was not carelessly drawn. Some of its terminology

bears the stamp of legal habit. Its author knew the difference between bequest and devise.

It was the infrequent exception and not the common habit if this will was not read over to Mrs. Bakke and its contents made known to and approved by her. Presumptions follow not the exceptions but the common habits of human conduct. And the one we are now applying—that the due execution of a will presupposes the testator's knowledge of its contents—is based upon one of the most common habits of mankind, one that in important matters seldom admits of exception. It is that "men do not commonly sign papers without knowledge of what is embraced in them; and this is true alike of those who can read and of those who cannot." Vernon v. Kirk, 30 Pa. St. 218, 224. "It is a fair presumption, recognized by the law, that if a man of intelligence executes with due formalities an instrument of so solemn a nature as a will, he knows its contents." 1 Underhill, Wills, 201; Waters v. Waters, 222 Ill. 26, 39, 78 N. E. 1, 113 Am. St. 359. It is not possible therefore to assume fraud or undue influence from the mere fact of blindness as the argument for appellant demands.

We adopt without hesitation the views expressed in Lipphard v. Humphrey, 209 U. S. 264, 28 Sup. Ct. 561, 52 L. ed. 783, 14 Ann. Cas. 872. There the inability of the testatrix to read her will, although not caused by blindness, was as complete as that of Mrs. Bakke. There was no evidence that it had been read or explained to her. She, as did also Mrs. Bakke, declared in the presence of witnesses that it was her will. There, as here, the provisions of the will were "reasonable and natural," and the testatrix was a woman of "mental health and vigor when the instrument was executed; and there was no suggestion of fraud or undue influence." Speaking for the unanimous court, Mr. Chief Justice Fuller said [page 268]:

"In these circumstances the jury properly concluded that the testatrix knew the contents of the will at the time of its execution, and the court might well have directed such finding, unless the bare fact of the inability of testatrix to read raised a legal presumption that she did not possess that knowledge, and the absence

of the reading of the will to her at that time was fatal. But we know of no such presumption as matter of law, and on the contrary, the presumption where a will is properly signed and executed is that the testator knows the contents. Where there is evidence of the practice of fraud or of undue influence, affirmative proof of knowledge of the contents may be necessary, but not so in any other case, simply because of a presumption arising from inability to read." (Citing Taylor v. Creswell 45 Md. 422, 431; Vernon v. Kirk 30 Pa. St. 224; Clifton v. Murray, 7 Ga. 565, 50 Am. Dec. 411; Doran v. Mullen, 78 Ill. 342; Walton v. Kendrick, 122 Mo. 504, 27 S. W. 872, 25 L. R. A. 701; Nickerson v. Buck, 12 Cush. (Mass.) 341; Guthrie v. Price, 23 Ark. 407; King v. Kinsey, 74 N. C. 261; Hoshauer v. Hoshauer, 26 Pa. St. 404) * * *. [And at page 275]:

"True, the presumption that a party signing a will by mark, or otherwise, knows its contents, is not a conclusive presumption, but it must prevail in the absence of proof of fraud, undue influence, or want of testamentary capacity attending the execution of the will. In the present case there was no attempt to show that the testatrix was not capable of making a valid deed or contract at the date of making the will; on the contrary, the evidence showed that she was a woman of energy, capacity and intelligence. Nor was any proof offered of fraud or undue influence in the production of the will. Mrs. Lipphard brought the will, as we have said, to Miss Parker's office for the purpose of having it executed; she declared to the attesting witnesses the paper to which she made her mark to be her last will and testament. She was a person of sound mind at the date of the will, and it was executed and attested in the manner required by statute."

That decision is not explained by any rule peculiar to the Federal courts, as was intimated in argument. It applies rather a long standing and general rule of presumption thoroughly established in the law of wills.

Further review of authorities is not justified. They are collected and discussed by notes in L. R. A. 1918D, 747-763, and 9 A. L. R. 1416. They are not in accord. A few indicate the view that the

will of a blind or illiterate person is not admissible to probate without affirmative and special proof that its contents were made known to the testator. See that portion of the note in 9 A. L. R. 1416 dealing with "Knowledge of Contents." It is easy to be misled by the manner in which the cases are there dealt with.

It is incorrect to say that blindness of the testator has anything to do with the burden of proof. That burden remains with the proponents at all times. Dunnell, Minn. Pr. Law, § 268. Compare Lebens v. Wolf, 138 Minn. 435, 165 N. W. 276, L. R. A. 19 8C, 868. But they may make out a prima facie case without proof of knowledge of contents other than the presumption arising from due execution. "As bearing upon the matters which proponents were required to establish to make out a prima facie case, this impairment of the sense of sight was not important, nor does this fact change the rule as to the burden of proof." Ross v. Ross, 140 Iowa, 51, 117 N. W. 1105.

Blindness only makes easier the task of a contestant to prove fraud or undue influence. Standing alone, it proves neither. There is no other proof in this case so the order appealed from must be affirmed.

So ordered.