## In Re ROWLAND'S ESTATE.

(18 N. W.2d 290.)

(File No. 8680. Opinion filed April 16, 1945.)
Rehearing Denied June 8, 1945.

**R. A. Smiley,** of Belle Fourche, and **Robert C. Hayes,** and **Alex Rentto,** both of Deadwood, for Appellant.

**Burton Penfold,** of Belle Fourche, and **Chas. L. Brady,** of Buffalo, for Respondent.

ROBERTS, J. This appeal involves a contest of the will of Kathrina Rowlands ,who died August 18, 1940, at the age of 78 years. Petition for admission of her will to probate was filed by James P. Walsh, a beneficiary under its terms as well as one of the executors named therein. Objections to probate were filed by Mary K. Brink, a niece of the deceased, challenging the validity of the will on the grounds that it was not executed in the manner and form prescribed by law; that testatrix did not know the contents of the will; and that she was induced to make the will through the undue influence of proponent. The circuit court on a trial de novo upon an appeal from the county court found the will valid and entered judgment sustaining its admission to probate. Contestant appeals from the judgment.

The document offered for probate is typewritten, bears date of March 18, 1937, and was signed by testatrix and two witnesses. Under the terms of her will, after giving directions as to the disposition of her body and the payments of debts, testatrix bequeathed $4,000 to a relative of her deceased husband, $2,000 to each of two relatives in Germany, $4,000 to Reverend James P. Walsh and to him the further sum of $1,000 to be used for masses. The attestation clause is full and complete and includes a recital that the will was signed and by testatrix declared to be her last will in the presence of the witnesses. The two subscribing witnesses and proponent testified to the circumstances surrounding the execution of the will. The subscribing witnesses testified that their signatures and that of Mrs. Rowlands are genuine and that they signed as witnesses at her request. Reverend James P. Walsh testified that he read the attestation clause in the presence of testatrix and the two witnesses, that she then signed the purported will and that the two witnesses signed in her presence.

▪▪▪ Where the attestation clause is full and complete and was read by the witnesses or to them and there is no contest as to the genuineness of the signatures of the testatrix and the witnesses, there arises a strong presumption that the will was duly executed and to defeat probate the presumption must be overcome by clear and satisfactory evidence. Ross v. Taylor, 39, S. D. 608, 165 N. W. 1079; Hauer et al. v. Hauer, 45 S. D. 103, 186 N. W. 566; 76 A. L. R. 617. Such proof, strictly speaking, gives rise to an inference of fact that the will was duly executed and has probative force. One of the witnesses declared in an affidavit that testatrix did not sign in her presence. Later her deposition was taken and she testified: "Q. About the fourth of September, 1940, you apparently signed a paper for Mr. Fitzgerald, an attorney in Omaha, in which it is stated that Mrs. Rowlands did not sign that will in your presence. A. That is not exactly the way I put it. I said I didn't remember whether it was signed in my presence, when I put my signature on it. That is the way they wrote it up. I was worried and under a strain at the time and I couldn't remember anything." The court had a right to consider the statement contained in the affi-

davit and subsequently repudiated in connection with the credibility of this witness, but so far as proof that the requirements of the law were observed is concerned, there is other explicit testimony and the inference deducible from the attestation clause, and taking the case as a whole we are of the opinion that there was ample evidence to sustain the finding that the will was executed in compliance with statutory requirements.

██ ██ It is claimed by contestant that there is no evidence in the record showing that textatrix ever read the will or that the will was read to her. We agree that she could not have made a valid will without knowing its contents. However, there is no statutory requirement that a will be read to the testatrix or to the witnesses thereto prior to its execution. Testatrix may have desired that the contents of her will be not revealed. It is sufficient if the court was satisfied by competent evidence that the contents of the will were known to and approved by her at the time it was executed as a will. Testatrix came to this country in 1899 from Germany. It affirmatively appears that she could read German, but the evidence tends to show that if she reads English at all, she read with much difficulty. Evidence tending to prove that she could not read the language in which the will was written and could not write it except to sign her name did not tend to establish either her inability to make a will or her ignorance of its contents.

██ In the ordinary case of the execution of a will, the presumption of due execution extends to include knowledge of its contents. 68 C. J., Wills, § 751; L. R. A. 1918D, 747 If a testatrix by reason of physical or educational disability as blindness or inability to read the language in which the will is written is unable by the exercise of her own faculties to determine for herself whether it expresses her testamentary desires, there is some conflict of authority as to the admissibility of her will to probate without affirmative proof that its contents were made known to her. In some cases, presumption of knowledge of the contents has been held to arise from the due execution of the will although decedent was illiterate or blind. Lipphard v. Humphrey, 209 U. S.

264, 28 S. Ct. 561, 52 L. Ed. 783, 14 Ann. Cas. 872; In re Bakke's Will, 160 Minn. 56, 199 N. W. 438, 37 A. L. R. 597. In other cases, it has been held that the presumption of knowledge does not arise in case of such disability. Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188; In re Bull, 111 N. Y. 624, 19 N. E. 503; Maxwell v. Hill, 89 Tenn. 584, 15 S. W. 253. In re Gluckman's Will, 87 N. J. Eq. 638, 101 A. 295, L. R. A. 1918D, 742, it was held that if a testator by reason of physical or educational disability cannot read the language in which a will is written an additional burden is imposed upon the proponent to show that testator was made acquainted with the provisions of the will if there are any circumstances leading the court to suspect that testator may have been imposed upon.

■ Contestant claims that the will was written by proponent, but the evidence does not sustain her in this contention. Testatrix had the will in her possession and produced it for signing by herself and witnesses. Persons "do not commonly sign papers without knowledge of what is embraced within them; and this is true alike of those who can read and those who cannot." Vernon v. Kirk, 30 Pa. 218. The instrument propounded for probate was shown to have been duly executed by testatrix and she having the instrument in her possession before execution had opportunity of learning its contents. Under these circumstances, she is presumed to have known its contents. We cannot say contrary to the usual custom that the unknown scrivener did not read and explain the provisions of the will to her. The case relied on by contestant to support her contention that the due execution of the will was not established because there was no evidence that it was read to her or that she knew its contents is the case of Kittleson's Estate v. Kittleson, 42 S. D. 126, 173 N. W. 161. The testator in that case could not understand the English language and could not have obtained knowledge of its contents from a reading of the will by the scrivener. The record discloses that every word of the instrument was dictated by the son of testator and that the will was not in possession of testator before execution. There were circumstances which called for proof

that testator knew the contents of the instrument offered for probate.

The remaining question for review is whether the finding that Katherina Rowlands at the time of the execution of the will offered for probate was not subject to duress, fraud or undue influence is sustained by the evidence.

 An important right given by statute to every person of full age and of sound mind is the right to dispose of his property by will, within the limits fixed by statute, as he chooses. Johnson v. Shaver, 41, S. D. 585, 172 N. W. 676. This right, of course, must be exercised when the testatrix has testamentary capacity and is not subject to undue influence. Mere general influence, however strong or controlling, not brought to bear on the testamentary act, is not sufficient. In re Schaefer's Will, 207 Wis. 404, 241 N. W. 382; Mackall v. Mackall, 135 U. S. 167, 10 S. Ct .705, 34 L. Ed. 84. Proof of mere opportunity to influence the mind of the testatrix, even though coupled with an interest or with a motive, is not sufficient. Gillette v. McLaughlin, 44 S. D. 499, 184 N. W. 277; Vassilos v. Arnold, 47 S. D. 147, 196 N. W. 545; Peterson v. Imbsen, 46 S. D. 540, 194 N. W. 842; In re Swanson's Estate, 54 S. D. 42, 222 N. W. 491; Tobin v. Nordness, 47 S. D. 255, 197 N. W. 783. Influence, to be undue, within the meaning of the law, must be of such a character as to destroy the free agency of the testatrix and substitute the will of another person for her own. In re Armstrong's Estate, 65 S. D. 233, 272 N. W. 799.

 The mere existence of a confidential relation between a testatrix and a beneficiary under her will such as attorney and client, physician and patient and clergyman and parishioner does not require a finding of undue influence and does not raise a presumption of undue influence nor cast the burden upon the beneficiary of disproving same. 66 A. L. R. 228. However, the existence of such a relationship may demand close judicial scrutiny. In re Daly's Estate, 59 S. D. 403, 240 N. W. 342. It is the rule in many jurisdictions that when in addition to the confidential relation there exists suspicious circumstances such as the fact that the beneficiary took part in the preparation or procuring of

the will, undue influence is presumed and by such proof contestant makes out a prima facie case. 68 C. J., Wills, § 451; Page on Wills, § 818 et seq.

The law does not require that a testatrix recognize her relatives, nor does it place any obstacle in the way of the aged or infirm in making disposition of their property by will. Obviously, where a will is inconsistent with testatrix's duty to her family and is not made according to the dictates of natural justice, it is a circumstance to be considered with other evidence. In Johnson v. Shaver, supra [41 S. D. 585, 172 N. W. 678], this court said:

"Where the will contains unjust or unnatural provisions, it demands close judicial scrutiny; the onus devolves upon the proponent to prove a reasonable explanation of the unnatural character of the will; there must be fair proof that the testator had mental capacity to comprehend its import; and the court must, from all the evidence, be led to believe that undue influence did not produce the unjust or unnatural disposition."

The essential elements of undue influence, invalidating a will, are (1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and (4) a result clearly showing the effect of such influence. In re Raasch's Will, 230 Wis. 548, 284 N. W. 571; In re Bowman's Estate, 143 Neb. 440, 9 N. W.2d 801.

We come to a consideration of the facts in the light of these principles of law and the principle that the findings of the trial court are presumptively correct and will not be disturbed upon appeal unless it appears from the record that there is a clear preponderance of the evidence against them.

It is urged that there was a confidential relationship and that this had the effect of overcoming the will of testatrix. Assuming that the evidence in the present case is sufficient to support the contention that a confidential and fiduciary relationship existed because of the fact that proponent was the religious and spiritual adviser of Mrs. Rowlands and because of his assistance in attending to business matters for her and that these circumstances made out a

prima facie case, we do not think that it may be reasonably held that the evidence required a finding of undue influence. While testatrix was at the time of the making of the will about 75 years of age, she was in possession of her mental faculties and there is no claim that she was not competent to make a will. The testimony reveals that she had a knowledge of her property and an understanding of the disposition which she desired to make of it. There is undoubtedly proof that if proponent had the disposition to use undue influence there was the opportunity, but it does not appear that decedent was unquestionably susceptible to such influence.

It is claimed that the will is unnatural in that no mention is made of contestant. Testatrix left no near relatives and it does not appear from the evidence that contestant had any particular claim upon her bounty. A niece or other collateral heir of a testatrix, because of such relationship alone, is not the natural object of her bounty. While testimony offered by the contestant tends to show that there was a cordial relationship between contestant and her aunt, the testimony of other witnesses is to the effect that there was not particular affection between them and that her aunt did not want contestant to have any of her property.

Finding no error in the determination of the issues presented the judgment appealed from is affirmed.

All the Judges concur.