IN RE ESTATE OF MARIE L. HAUSCHILD, DECEASED.
ALBERT O. SKOCHDOPOLE, EXECUTOR OF THE ESTATE OF
MARIE L. HAUSCHILD, DECEASED, APPELLEE, V. DAISY BAYS,
APPELLANT.
137 N. W. 2d 875
Filed November 12, 1965. No. 35972.

Dier & Ross and Mingus & Mingus, for appellant.

Moller R. Johnson and Nye & Wolf, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

Marie L. Hauschild died on February 2, 1964. Her last will and testament, dated October 16, 1960, was admitted to probate over objections in proceedings commenced for that purpose in the county court of Buffalo County, Nebraska. From that judgment, Daisy Bays, a daughter of the deceased and the contestant, appealed to the district court.

In the district court the parties stipulated that the

will had been duly executed. At the close of the contestant's evidence, the proponent moved to withdraw the issues of testamentary capacity and undue influence from the jury. The district court sustained the motion and entered judgment admitting the will to probate. The contestant's motion for new trial was overruled and she has appealed.

In this court the contestant has waived all issues except testamentary capacity. The only question presented by the appeal is whether the evidence was sufficient to raise a jury question concerning the testamentary capacity of the deceased at the time the will was executed.

The proponent produced the testimony of Lester V. Kozel and Robert R. Svanda who witnessed the execution of the will by the deceased. Kozel testified that he had been the postmaster at Ravenna, Nebraska, for 27 years; that he had been acquainted with the deceased since "the late 20's"; that on October 16, 1960, she asked him to witness her will; that she appeared to be normal at that time; that in his opinion the deceased had the mental ability to understand the nature of her act in making the will; that she knew the extent of her property; that she had the mental ability to understand the proposed disposition of her property; and that she knew who were the natural objects of her bounty.

Svanda testified that he has been a pharmacist in Ravenna, Nebraska, since 1924 and had known the deceased since that time; that on October 16, 1960, she asked him to witness her will; that she appeared to be healthy and he noticed nothing unusual about her; that she had the mental ability to understand the nature of her act in making the will; that she had the mental ability to know the extent of her property; that she had the mental ability to understand the proposed disposition of her property by the will; and that she knew who were the natural objects of her bounty.

Anyone, who at the time of the execution of his will

understands the nature of the act, the extent of his property, the proposed disposition of it, and the natural objects of his bounty, is competent to make a will. In re Estate of Bose, 136 Neb. 156, 285 N. W. 319. The evidence of the proponent in this case was sufficient to make a prima facie case that the deceased had testamentary capacity at the time she executed her will. It then became the burden of the contestant to produce sufficient evidence to support a contrary finding by the jury. In re Estate of Bucy, 150 Neb. 263, 34 N. W. 2d 265.

The evidence produced by the contestant shows that the deceased was born in Saxony, Germany, and came to this country when she was 14 years old; that she attended a German school near Ravenna, Nebraska, through the fourth or fifth grade; that she could not read or write English very well and had other persons read newspapers and mail to her; and that the deceased and one of her daughters corresponded by means of tape recordings. There is no evidence that the deceased had difficulty in understanding the English language, although she could not read or write it very well.

Mabel Von Krosigh, a daughter of the deceased, testified that her mother called her in 1960 and asked her to come home; that the witness arrived at her mother's home near Ravenna, Nebraska, on Thursday, October 13, 1960, and stayed with her mother; that her mother was planning to have surgery at Grand Island, Nebraska, on Monday, October 17, 1960, and appeared to be very nervous and was quite concerned about making a will; that the deceased did not go to her lawyer's office in Ravenna, Nebraska, while the witness was with her but did go to Mr. Skochdopole's office on Saturday, October 15, 1960. Albert O. Skochdopole is the executor named in the will and the proponent in this proceeding.

On the morning of October 16, 1960, Mrs. Von Krosigh took her mother to Ravenna, Nebraska. On the trip into town the deceased said she would like to fix the

property so the land would be in the boys' names but they could never sell it, let the girls have the money, give "Uncle Louie" some money and a house, and give something to the church. They stopped at Mr. Skochdopole's office first and then went to Mr. Johnson's office where the will was executed. After the deceased went into Mr. Johnson's office, Mr. Skochdopole arrived, then Mr. Kozel, and last Mr. Svanda. About 5 or 6 minutes after Mr. Svanda entered Mr. Johnson's office, the deceased came out of the office. The deceased was nervous and shaking so much that she could not open the car door. The deceased began to cry and said: " 'Mabel, I didn't get to make it like I wanted to. They didn't let me make it the way I wanted to.' " Mrs. Von Krosigh then said: " 'Mother, why did you sign it, then?' " The deceased did not reply but continued to cry. Mrs. Von Krosigh then said: " 'Oh, mom, it can't be that bad, * * * Albert Skochdopole has done such a beautiful job. You're probably mistaken.' " They then returned to the home of the deceased.

Gertrude Chaney, a daughter of the deceased, testified that she came to her mother's home at about 1:30 p. m., on October 16, 1960; that her mother was sitting in the kitchen when she arrived; that she appeared to be pale, worried, and frightened about going to the hospital; that when asked how she felt, the deceased said she didn't feel very well; that the deceased started to cry and then said, " 'Gertie, they wouldn't let me make my will like I wanted it' "; and that when Mrs. Chaney asked who "they" were, the deceased said, " 'At the attorney's office.' " Later in the afternoon, Mrs. Von Krosigh took the deceased to the hospital in Grand Island where the deceased had surgery the following day.

The deceased remained in the hospital at Grand Island for 10 days and then returned to her home. She had further surgery in April 1961, and was hospitalized in September 1963.

Mrs. Chaney further testified that in December 1963,

she took the deceased to Grand Island to visit her son Otto, a brother of Mrs. Chaney; that as they passed the Fred Hankins land south of the land owned by the deceased, she pointed to the Hankins farm and said: " 'I could buy this, but in my will the children that don't get land will get equal amounts of money, to the land.' "

The deceased was again hospitalized in January 1964, and died February 2, 1964.

The contestant does not urge that the deceased lacked the necessary mental ability to make a will on October 16, 1960. The contestant contends that the record fails to show that the contents of the will were known and approved by the testatrix.

It is essential to the validity of a will that the testator know and understand the contents thereof at the time of its execution. In re Estate of Bose, *supra*. It is not essential that the testator understand the meaning of all the technical terms and legal phraseology employed in the will or be able to correctly interpret the will in a legal sense. It is sufficient that he understand the meaning and effect of the instrument as a whole if it truly expresses his testamentary intention as to the disposition of his estate.

The evidence in this case does not show that the will was not read or explained to the deceased at some time prior to its execution, although the record does show that the will was not read to the deceased at the time of its execution. However, there is no requirement that a will be read to the testator or the witnesses thereto prior to its execution. It is sufficient if the court is satisfied by competent evidence that the contents of the will were known to and approved by him. In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513; In re Estate of Bose, *supra*.

It was stipulated in this case that the will was duly executed. The act of execution raises a presumption that the deceased knew and approved the contents of the

will. If a testator, of sound mind and under no restraint, executes a will, it will be presumed, in the absence of evidence of mistake, fraud, and the like, that he executed it with knowledge of its contents, although it is not read at execution. 1 Page on Wills (Rev. Ed.), § 5.9, p. 179. See, also, In re Estate of Dobals, 176 Iowa 479, 157 N. W. 169; In re Rowland's Estate, 70 S. D. 419, 18 N. W. 2d 290; In re Will of Bakke, 160 Minn. 56, 199 N. W. 438, 37 A. L. R. 597; 57 Am. Jur., Wills, § 861, p. 572; 94 C. J. S., Wills, § 130, p. 906; 95 C. J. S., Wills, § 384a (3), p. 273.

The contestant argues that when evidence was introduced which showed that the deceased could not read English and that the will was not read to her at the time of its execution, the proponent should have been required to prove affirmatively that the deceased knew the contents of the will. The contestant relies upon In re Gluckman's Will, 87 N. J. Eq. 638, 101 A. 295, L. R. A. 1918D 742, and Blume v. Hartman, 115 Pa. 32, 8 A. 219, 2 Am. S. R. 525. In the Blume case the will was prepared by a beneficiary and the evidence showed that the testatrix did not know the contents of the will at the time it was executed. In the Gluckman case the court said that where a testator by reason of physical or educational disability is unable to read the will, an additional burden is imposed upon the proponents where there are circumstances which lead the court to suspect that the testator may have been imposed upon. These authorities are not applicable to the facts in this case.

The evidence in this case indicates that the testatrix understood the provisions of her will. Her statements to Mrs. Von Krosigh in Ravenna, immediately after the execution of the will, and to Mrs. Chaney at her home in the afternoon of the same day, that she had not made the will the way she had wanted to make it, indicate that she knew what was in the will.

The deceased was survived by six children, three girls and three boys. Her land was devised to two of her

sons and charged with the payment of specific amounts to the other four children and a brother of the deceased, referred to in the record as "Uncle Louie."

The deceased lived more than 3 years after the making of the will. There is no evidence that she made any effort to change her will during this time or that she made any further expression of dissatisfaction with it. Her statement to Mrs. Chaney in December 1963, made more than 3 years after the execution of the will, indicates that she understood and remembered the testamentary plan expressed in the will although her opinion as to values may have been not realistic.

The evidence in this case was sufficient to admit the will to probate as a matter of law, and did not present a jury question as to the testamentary capacity of the deceased.

The judgment of the district court admitting the will to probate is affirmed.

AFFIRMED.