IN RE ESTATE OF RICHARD M. CAIN, DECEASED.
LLOYD R. HOLMAN, JR., APPELLANT, V. LOLA MORRISON,
APPELLEE.

181 N. W. 2d 441

Filed December 4, 1970. No. 37569.

Ronald E. Reagan and Francis M. Casey, for appellant.

Lathrop, Albracht & Dolan and Atkinson & Kelly, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an appeal from a jury verdict and district court judgment denying probate of a will. The issues raised in the case were testamentary capacity and undue influence. We affirm the judgment of the district court, based on the jury verdict, denying probate of the will.

Richard M. Cain, the testator, was a resident of Sarpy County, Nebraska. He died on March 24, 1968, at the age of 66, leaving an instrument, dated November 5, 1965, purporting to be his last will and testament. Lloyd R. Holman, Jr., a nephew, was named as sole beneficiary in the instrument. Holman, the appellant here, was proponent of the will. The county court of Sarpy County, Nebraska, denied probate of the will and Holman ap-

pealed to the district court. Lola Morrison, sister of the testator, was the contestant and is the appellee here.

The precise issues presented on appeal are whether or not there was sufficient evidence to raise a jury question, both as to testamentary capacity and undue influence. In resolving this question, the appellee is entitled to have all controverted facts resolved in her favor together with any reasonable inferences that may be drawn therefrom. In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418. It is clear, and indeed it is not denied by the contestant here, that the proponent made a prima facie case on both issues. Under familiar rules, the burden of going forward with the evidence then shifted to the contestant, and the issue raised in this case is whether the contestant introduced sufficient evidence to carry the case to the jury. In re Estate of Bayer, 119 Neb. 191, 227 N. W. 928.

The elements of testamentary capacity are well established under our case law. They are that the testator (1) understood the nature of his act in making the will; (2) knew the extent and character of his property; (3) knew and understood the proposed disposition of his property; and (4) knew the objects of his bounty, that is, usually those who would take deceased's estate in the absence of a will. See Skochdopole v. Bays, 179 Neb. 307, 137 N. W. 2d 875.

On the issue of testamentary capacity, one James M. Schott, having lived with the testator for over 2 years, testified that it was his opinion that the testator was not capable of conducting his own business and that he was childish in character, "Kind of in a wonder world." There is testimony that the testator did not understand his mail, and often would bring advertisements to his neighbor, Steyskal, thinking that they were something official. There is testimony from which an inference can be drawn that he did not know how much cash money he had on hand; that he did not know how much rent he had coming; and that generally from the

time of his hospitalization until the time of his death he was not able to take care of his own business. The evidence on this issue and that of undue influence overlaps and is recited in some detail later in this opinion. The medical testimony and lay testimony relating to the testator suffering from a degenerating chronic brain syndrome, hardening of the arteries, and a personality and judgment impairment are particularly pertinent to the different elements of testamentary capacity. Considered as a whole, we come to the conclusion, as the district court did, that there was ample evidence to warrant the jury to draw a reasonable inference that one or all of the elements of testamentary capacity was lacking at the time the instrument purporting to be the testator's last will and testament was drawn.

A more elaborate question is presented with reference to the issue of undue influence. We have held that the tests to be applied to the issue of the sufficiency of the evidence to sustain a finding of undue influence are that the testator (1) was susceptible to such undue influence; (2) that the opportunity to exercise existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. The contestant produced evidence from which a reasonable inference could be drawn that the testator was subject to the influence of others, mainly because of his extremely dependent relationship and his physical and mental condition. There was medical and lay testimony that the testator had been hospitalized twice for mental and physical ailments within an 18-month period prior to execution of the will. The testator was an elderly man, living a lonely life, and suffering from a mental disorder based upon a physical disability, which his own psychiatrist testified made him susceptible to the influence of others. Particularly significant here is the undisputed testimony that in addition to the personality change, substantial impairment of judgment and confusion associated therewith, the testator was on medi-

cation after his release from the hospital until the time of his death.

As to the question of the opportunity to exercise undue influence the evidence strongly supports the jury verdict. The testator had been placed under a guardianship in early 1964 which lasted until September 23, 1965, and was changed to a conservatorship. The proponent was the testator's guardian and conservator during this period. It was only approximately 6 weeks after the guardianship was terminated that the purported will was made.

The testator lived alone for many years after the death of his brother. He developed a very close relationship with a neighbor, one Stanley Steyskal, who testified for the contestant, who had a farm home approximately 300 yards from the home of the testator. Testator made daily visits to the Steyskal residence, helped some around the Steyskal farm, and would almost daily stay for lunch. This had gone on for quite a few years. The relationship, the evidence shows, developed gradually and Mr. Steyskal had been farming the testator's farm for approximately 9 or 10 years. Mr. Steyskal testified that, in the first part of 1964, he noticed a marked change in the mental attitude and personality of the testator. Steyskal, after a few months, felt that something had to be done about it. The testator's problems grew progressively worse and Mrs. Steyskal finally called the testator's sister, Lola Morrison, the contestant here. She was not able to help and so Mrs. Steyskal called the testator's nephew, Max Holman. As a result, the testator was hospitalized. He spent about 80 days in the hospital under the care of a psychiatrist. He was later transferred to another hospital where he was under the care of another psychiatrist, Dr. James R. Dunlap, who was a witness for the contestant in this case. This doctor testified that the testator was withdrawn, depressed, confused, unable to cope with his own personal needs, and unable to care for himself. His

diagnosis was "involutional depression" or "chronic brain syndrome" with paranoid depressive symptoms. There was hardening of the arteries that had affected the brain and in turn had a serious effect upon the personality of the testator and the impairment of his judgment. He testified that the testator had suspicions and fears that were irrational and that he was confused. This undisputed medical testimony is obviously pertinent to both the issue of testamentary capacity and undue influence. The inferences to be drawn therefrom are accentuated by the fact that the testator's condition was becoming progressively worse. He was again hospitalized from June 11, 1965, until July 2, 1965. After release from the hospital this last time he was continuously on medication until the time of his death, and, of course, was in that condition at the time of making the instrument purporting to be the will in this case. The evidence also shows that a guardianship was established in early 1964, and later changed into a conservatorship. It was during the conservatorship on November 5, 1965, 6 weeks after the dissolution of the guardianship, that the testator made the purported will at issue in this case.

It appears clear from this evidence that a reasonable inference could be drawn that the testator was subject to and susceptible to undue influence in the execution of his will and an opportunity to exercise such influence existed.

We also believe that a disposition to exercise influence for an improper purpose was demonstrated in the evidence. The neighbor, Stanley Steyskal, a completely disinterested witness, and probably more familiar with the testator in a lay sense than anybody else, testified that the proponent freely admitted to Steyskal that it was the proponent who should receive all of the testator's property. The testator had told Steyskal that the proponent was trying to talk him into willing his property to him but that was not what he wanted to do. The testator later told Steyskal that he was relieved because

the proponent had promised to tear up the will in question. It is true that the proponent and Steyskal were not on friendly terms, but this is a matter of credibility for the jury under all of the circumstances.

The result clearly shows the effect of the undue influence. From an examination of the terms of the will itself, it appears that there was an inequality in distribution, unreasonableness, and unnaturalness of the will which may be taken into account in deciding the issue of the effect of undue influence. In re Estate of Bowman, 143 Neb. 440, 9 N. W. 2d 801. The proponent, only one of several nephews and nieces, was the sole beneficiary under the will. Not only were the other nephews and nieces excluded, but the surviving brothers and sisters of the testator were shut out as well. It is true that in the absence of other factors indicating undue influence, the mere exclusion of other relatives would not be given great weight, but as the evidence was presented we believe the jury could, as it did, draw a reasonable inference that the purported will does show the effect of undue influence by the proponent.

For the reasons stated, the jury verdict was based on sufficient evidence and the judgment of the district court is affirmed.

AFFIRMED.

SMITH, J., not participating.