In the Matter of the Petition of THOMAS F. REGAN, Respondent, to Prove the Last Will and Testament of ELIZA REGAN, Late of the County of Kings, Deceased, as a Will of Real and Personal Property.

DENNIS S. REGAN and JOHN J. REGAN, Appellants.

Second Department, October 26, 1923.

Wills — probate — testimony of subscribing witness competent though memory has to be refreshed — execution — testatrix was unable to read or write — due execution not shown in absence of proof that will was read to testatrix or its terms disclosed to her prior to execution.

The testimony of a subscribing witness to a will to the due execution thereof by the testatrix is competent and sufficient to establish the facts as to execution and publication, although it is necessary for him to refresh his memory concerning the execution of the will.

The due execution of a will of a testatrix who was unable to read or write is not shown where there is no evidence that the will was read to her prior to execution, or that its contents were otherwise disclosed to her prior to the time she made her mark in executing the will.

APPEAL by Dennis S. Regan and another, contestants, from a decree of the Surrogate's Court of the county of Kings, entered in the office of the clerk of the Surrogate's Court on the 19th day of June, 1923, upon the verdict of a jury, rendered by direction of the court, admitting to probate the paper writing propounded

as the last will and testament of Eliza Regan, deceased, and also from an order, entered in said clerk's office on the 12th day of June, 1923, denying their motion to set aside the verdict and for a new trial made upon the minutes.

*Thomas E. O'Brien* [*Robert A. Huddleston* with him on the brief], for the appellants.

*Harry J. Rosenson* [*Louis Lorence* with him on the brief], for the respondent.

KELLY, P. J.:

On February 19, 1923, Eliza Regan, a resident of Kings county, died leaving her surviving a son Thomas F. Regan, the proponent, Florence V. L. Regan a daughter, and two other sons John J. and Dennis S. Regan, the contestants, all of full age. She was a woman about fifty-five years of age, a good mother, very fond of her children and interested in their welfare. She could not read or write. After her death her son Thomas F. Regan offered for probate an alleged last will and testament of his mother, dated July 25, 1905, between seventeen and eighteen years prior to her death, in which she devised premises on North Eleventh street, Brooklyn, to her sons John, Thomas and Dennis, and all the rest, residue and remainder of her property, real and personal, to her daughter Florence. She appointed her son Thomas guardian of the person and estate of his sister during minority and also appointed him executor of the alleged will.

The alleged will having been offered for probate, the sons John and Dennis filed objections, denying that the paper propounded was the will of decedent and also denying that it was lawfully executed, subscribed, attested or published by decedent as her will, and also charging undue influence on the part of the son Thomas. The contestants demanded a jury trial. An order was made framing issues for trial, as follows: " I. Was the alleged last will and testament bearing date the 25th day of July, 1905, duly executed by Eliza Regan? II. Did Eliza Regan possess testamentary capacity at the time of the execution of the alleged last will and testament on the 25th day of July, 1905? III. Was the execution of the alleged last will and testament procured by fraud or undue influence practiced upon the said Eliza Regan?" and the matter coming on for hearing the surrogate at the conclusion of the contestants' evidence directed a verdict in favor of the proponents of the will.

The instrument in question is signed by the mark of Eliza Regan, followed by the usual attestation clause, subscribed by Joseph E. Smith and Peter P. Huberty as witnesses. Mr. Huberty,

a well-known and reputable lawyer in Brooklyn, died some time prior to the probate proceedings, and the proponent relied upon the evidence of the surviving witness to establish execution and publication of the alleged will. Dr. Joseph E. Smith, the surviving witness, who is a respected physician, practicing in Brooklyn for the past forty-eight years, testified that Mrs. Regan made her mark on the paper in question, and as to the declaration that it was her last will, and her request that it be witnessed. He also testified that he and Mr. Huberty signed the will as witnesses and that Mrs. Regan appeared to be a woman of sound mind and not acting under any restraint or undue influence. It is true that Dr. Smith, testifying to a transaction occurring eighteen years before, admitted that it had passed entirely from his memory until his attention was called to the document bearing his signature, and until after a conversation with his wife and other inquiries made by him for the purpose of refreshing his memory. I have no doubt of the competency and sufficiency of Dr. Smith's testimony to establish the facts as to the execution and publication of the instrument in question. (*Matter of Kellum,* 52 N. Y. 519; *Matter of Pepoon,* 91 id. 255; *Brown* v. *Clark,* 77 id. 369; *Matter of Sizer,* 129 App. Div. 7; affd., without opinion, 195 N. Y. 528.) At the opening of the trial the learned counsel for the contestants told the surrogate that he did not question the soundness of mind of Mrs. Regan. It appears that the house 201 North Eleventh street, Brooklyn, devised to the proponent and to the contestants in the alleged will, was not owned by Mrs. Regan but had been the property of her deceased husband who died without making a will, and apparently at the date of the instrument the property was owned by the contestants as tenants in common with their sister and the proponent. It also appeared that about a month before her death Mrs. Regan conveyed the house in which she lived on Bedford avenue to her son Thomas, the proponent. But I doubt whether there was any evidence in the case of undue influence.

The serious objection to the direction of a verdict for the proponent and to the decree of the surrogate admitting the alleged will to probate, is found in the contestants' claim that proponent failed to establish due execution of the will because the decedent being illiterate, not able to read or write, there was no evidence that she knew the contents of the instrument signed by her. The necessity for this evidence was called to the attention of the learned surrogate by motion to dismiss at the close of the evidence for proponent and again at the end of the testimony. Both motions were denied over the contestants' exception.

I have referred to the fact that Dr. Smith's evidence, with his

Second Department, October, 1923. [Vol. 206

memory refreshed by the attestation clause signed by him, went to the matter of the mark by the decedent, her declaration that the instrument was her will, her request to the witnesses to sign and their subsequent signature. Beyond these particulars Dr. Smith would not go. His statement was that Mr. Huberty asked decedent to make her mark on the instrument; that she made her mark; that somebody, either Mrs. Regan or Mr. Huberty, declared the instrument to be a last will and testament; Mr. Huberty asked him to sign, which he did, and that Mr. Huberty also signed as a witness. Asked if there was any conversation *after* Mrs. Regan made the mark and before he signed as witness, he said he did not remember any such conversation. He said: " My best recollection with regard to it is that Mr. Huberty had the paper, had something to say to Mrs. Regan, and then I signed the paper." He could not recall what was said and finally said he had no recollection whatever with reference to it. Nor could he recall any conversation after his signature. There was no attempt made to prove that there was any conversation *before* Mrs. Regan made her mark, and there was no evidence that Mr. Huberty drew the will or that he had received any instructions from Mrs. Regan prior to its execution.

It seems to me that there is no evidence in the record upon which the learned surrogate could reach the conclusion that the paper in question was read to the decedent, or that its terms and conditions were disclosed to her prior to the making of her mark. I do not say that it is necessary to prove these precise facts in all cases, but in the case of an illiterate testator who cannot read or write there must be something more than the mere fact that the testator affixed his mark to the will. " The civil law required that the written will of a blind person [and a person who cannot read is to all intents and purposes blind to the contents of an instrument] should be read over to him and approved by him in presence of the subscribing witnesses. Our common law lays down no such imperative rule, but with regard to both blind and illiterate, and all who cannot read what is written out as their will, requires satisfactory proof of some kind to the effect that the testator knew and approved of the contents of the will which was executed as his own. Such a will may be read over to the testator before signing, apart from his witnesses; or it may be shown that the contents were correctly made known to him without any formal reading at all; provided it appear, on the whole, that the instrument as drawn up and executed constituted his own testamentary disposition as intended by him. Less than this, however, is unacceptable." (Schouler Wills [5th ed.], § 317.) " In the case of persons

who are so ill, or otherwise disabled as to be unable to write, as well as in cases of illiteracy, there is no presumption that the testator knew what he was doing; but the knowledge of the contents of the will and the character of the paper have to be proved." (Jessup Surr. [4th ed.] 331.) In *Matter of Bedell* (107 App. Div. 284) this court said through MILLER, J.: "The contestant, although not disputing that the testator was of disposing mind and memory, invokes the rule that, under the circumstances disclosed in this case, it was not sufficient for the proponent to show merely the formalities which ordinarily suffice to justify probate, but that it was necessary to show affirmatively that the testator knew the contents of the will and that it expressed his intention. Ordinarily proof of the factum of the will is sufficient to meet the burden always cast upon the proponent of showing that the instrument offered was in fact the will of the testator, but the appellant in this case concedes that he was required to show affirmatively that the testator had an intelligent knowledge of the contents of the will, and asserts that he has shown this by the evidence of two witnesses   *   *   *. The testator evidently knew that he was executing a will and thought he knew its contents, and we must assume that something was read to him; but there is no proof that the instrument offered was ever read to him, that he knew its contents, or that it expressed his intention, unless the evidence referred to constituted such proof. The learned surrogate thought that, under the peculiar circumstances disclosed in this case, this evidence was not sufficient to meet the burden cast upon the proponent, and in this view we fully concur." In *Rollwagen* v. *Rollwagen* (63 N. Y. 504, 517) the Court of Appeals said through EARL, J.: "A party who offers an instrument for probate as a will must show satisfactorily that it is the will of the alleged testator, and upon this question he has the burden of proof. If he fails to satisfy the court that the instrument speaks the language and contains the will of the testator, probate must be refused. The laws in reference to the distribution of the estates of persons dying intestate are founded upon principles of public policy and justice, and must regulate the transmission of property unless a person before death has in the mode prescribed by law himself provided how his property after his death shall be disposed of.   *   *   *   Ordinarily, when a testator subscribes and executes a will in the mode required by law, the fact of such subscription and execution are sufficient proof that the instrument speaks his language and expresses his will; but when a testator is deaf and dumb, or unable to read or write and speak, something more is demanded. There must then not only be proof of the factum

Second Department, October, 1923.                    [Vol. 206

of the will, but also that the mind of the testator accompanied the act, and that the instrument executed speaks his language and really expresses his will." It seems to me that in the case now before us there is an entire absence of evidence that the woman knew the contents of the document to which she affixed her mark. The proponent testified without objection to his competency, that "Ma would tell everybody about her will. She wanted to protect her daughter, yes, she would tell that." He also said: "All the brothers knew everything she made out. She would tell everybody about it; told us about it." Contestants' motion to strike out this last answer was denied over contestants' exception, erroneously I think. He says, without objection, that the three brothers knew all about it, and again, "Ma told them herself." But this evidence does not help the proponent. These conversations testified to by an interested witness in this general way were after the execution of the alleged will, and do not help us in ascertaining whether there is evidence that the decedent had any knowledge of the contents of the paper at the time she affixed her mark to it. While it may be unfortunate for the daughter that this document should be refused probate, still the principle involved is too important to pass over the objection presented in due form by the contestants. "It is not the duty of the court to strain after probate, nor in any case to grant it, where grave doubts remain unremoved, and great difficulties oppose themselves to so doing." (*Delafield* v. *Parish*, 25 N. Y. 9, 35.) I am, therefore, forced to recommend reversal of the surrogate's decree.

RICH, JAYCOX, MANNING and YOUNG, JJ., concur.

Decree of the Surrogate's Court of Kings county, admitting will to probate, and order denying motion to set aside the verdict of the jury, reversed upon the law, and a new trial granted, with costs to appellants payable out of the estate.