42 P.(2d) 1113

## In re RIEDLINGER'S WILL.

### No. 4077.

Supreme Court of New Mexico.

March 27, 1935.

W. B. Walton and R. M. Wiley, both of. Silver City, for appellant.

C. C. Royall and Wilson & Woodbury, all of Silver City, for appellees.

WATSON, Justice.

This is an appeal from a judgment of the district court refusing probate to the last will and testament of Mina F. Riedlinger, deceased.

On a former occasion this will was admitted to probate on findings made by another judge. That judgment was reversed because of the denial of the right to trial by jury. In re Riedlinger's Will, 37 N. M. 18, 16 P.(2d) 549.

Following that reversal, the cause was reinstated on the docket, a jury was impaneled, and the parties went to trial. At the conclusion of the case, appellants (heirs at law objecting to the probate of the will) moved for and obtained a verdict by direction of the court.

At the court's suggestion, the proponent made a motion for a new trial, in connection with which the counsel submitted what the trial judge refers to as exhaustive briefs, after consideration of which the trial judge gave his opinion in writing, denying a new trial. We may perhaps best come to the questions here involved by quoting liberally from that opinion: ·

"The testimony of the proponent showed that the principal beneficiary, acting, as she stated, at the request of Mina Riedlinger, called Frank J. Wright to her home to draw a will. Mr. Wright had been attorney for Mina Riedlinger for some twenty-five years, and was a member of the Grant county Bar, .

in good standing. The testimony showed that Wright was with the testatrix for a few minutes, left the home, returned a short time thereafter and spent some time with the testatrix, that he returned the next morning and directed that the witnesses be called. The witnesses were called into the room by the principal beneficiary, with Mina F. Riedlinger and Frank Wright and Wright stated to them: 'Mrs. Riedlinger has made her will,' and then turned to Mrs. Riedlinger asked her: 'Do you want them to be your witnesses?' to which she replied, 'Yes.' There was but little difference in the testimony of the subscribing witnesses, Lillian Roberts and Alice E. Mayer, and upon this point I am satisfied that there is no question but the testatrix and the subscribing witnesses each signed in the presence of each other. The difficulty lies in the fact that Frank J. Wright departed this life before the first trial, and there is no testimony to show that the will was ever read or explained to the testatrix. The testimony is overwhelming and undisputed to the effect that Mina F. Riedlinger was a German, and could not read English script. The instrument offered for probate was written in English script, and in the handwriting of Frank J. Wright. The testimony of Lillian Roberts and Alice E. Mayer is to the effect that no part of the will was read over in their presence, nor was the certificate thereto read over in their presence or in the presence of Mina F. Riedlinger while they were in the room.

"Both parties have filed exhaustive briefs, and I have carefully read the cases cited, as well as many other authorities on the point. The great weight of authority is to the effect that where a will is written in a language which the testator cannot read or does not understand, there must be affirmatively shown that the will was read over to the testator or its contents made known to him before it is valid. * * *

"Had the proponent shown by some testimony in this case that the decedent knew what she was signing, or that she had made the declaration that this was in fact her last will and testament, and indicated that she knew its contents, then on the question of undue influence there would have been a valid issue for submission to the jury. * * *

"Because of the complete failure of the proponent to produce any evidence that the decedent, who was unable to read English script, had the will read over or explained to her in any manner, I am compelled to deny the motion for a new trial."

The judgment then represents a holding that the proponent had not made a prima facie case of a valid will. The showing, as the court makes plain, was deemed lacking in substantial evidence going to the essential fact that the will the testatrix signed is the will she designed or intended.

Ordinarily, as counsel agree, that requisite of a valid testament requires no independent proof. It is presumed that a testator who executes and publishes in due form does so understandingly; it is for ob-

jectors or contestants to bring some evidence to the contrary.

Particular circumstances of the making of the will or infirmities of the testator sometimes make the presumption inappropriate, or limit or perhaps destroy its force, necessitating something more than a formal signing and publishing as proof of understanding.

The infirmity urged in this case is that the testatrix was unable to read English script. It follows that she did not herself read this instrument.

There is much discussion in the briefs as to the effect of this fact, or such a fact, upon the presumption ordinarily indulged. Appellant relies on Lipphard v. Humphrey, 209 U. S. 264, 28 S. Ct. 561, 52 L. Ed. 783, 784, 14 Ann. Cas. 872, and numerous other decisions to support his contention that this fact alone should not overthrow the presumption. Appellees rely on In re Regan's Will, 206 App. Div. 403, 201 N. Y. S. 431, 434, in contending contra.

We think it unnecessary in this case to trace through the books the rise and fall of the presumption. Appellant did not rest his case upon it. He adduced all available evidence tending to throw light upon the testatrix' understanding of the dispositions she was making of her property. The question is whether therefrom a jury could properly infer understanding, or whether the judge was right in throwing it all out as unsubstantial.

The ultimate question is not whether the testatrix read this will, or even whether it was read to her; it is whether it is her will. It happens often that no living person is able to testify directly to the ultimate fact. In such a case the circumstances must determine it. Otherwise many testamentary attempts would be defeated.

In their arguments to sustain the judgment, we think counsel for appellees take too narrow a view of the proponent's evidence and of the jury's right to draw inferences therefrom. It is urged that we have no evidence whatever that the testatrix gave any directions as to how her property was to be disposed of; that there was no acquiescence by the testatrix in the statement by her attorney that she had made her will, or that the instrument he then held in his hand was the will she had made; that there is no evidence that, if the testatrix gave directions, they were embodied in the instrument she signed and published.

These facts, we think, might all be legitimately and quite naturally inferred. The will was prepared by testatrix' trusted legal advisor, a qualified, reputable, and upright lawyer, immediately following two conferences with his client. Certainly fraud or mistake is not to be assumed. The testatrix was an intelligent woman, capable of managing her business, and of comprehending this simple will. She was educated in German, spoke and understood English, and was able to read it in print. Is it to be assumed that she did not take some of the ordinary measures to assure herself that the

will she signed was the will she had directed and wanted?

In re Regan's Will, supra, was discussed and seems to have been greatly relied upon by the trial judge. We have found nothing in it contrary to our views as here expressed. Apparently the opinion was misinterpreted. Certainly the case did not present "a situation exactly similar to the case at bar." Nor did the court there state "that the instrument was drawn by a well known and reputable lawyer, who died sometime prior to the probate proceedings." On the contrary, the New York Supreme Court pointedly said: "There was no evidence that Mr. Huberty drew the will, or that he had received any instructions from Mrs. Regan prior to its execution."

All other authorities cited by appellees have been examined, and we have found none of them persuasive in support of this judgment. Indeed, Matter of Henry's Will, 18 Misc. 149, 41 N. Y. S. 1096, Davis v. Rogers, 1 Houst. (Del.) 44, and perhaps other of those cases, might well be cited to our position.

Our conclusion is that there was sufficient evidence to sustain the will, should the jury see fit to draw the inferences it might legitimately draw. It was error, therefore, to direct the verdict.

The judgment will be reversed, and the cause will be remanded for new trial. It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.