### In the Matter of the Will of JOSEPHINE NOLE, Deceased.

Surrogate's Court, New York County, July 23, 1943.

*Oliver E. Davis* for Joseph Nole, petitioner.

*Brodie G. Higley,* special guardian for Marie J. Nole, an infant, respondent.

DELEHANTY, S. The propounded paper was prepared by an attorney who does not speak the language of deceased. His good faith in its preparation is obvious but because deceased did not understand the English tongue and the draftsman did not understand the native tongue of deceased the testimony of the draftsman does not furnish any proof to the court that deceased understood the text of the paper that she signed. The same comments are applicable to the other witness to the propounded paper. He, too, understood no Italian — the only tongue known to deceased.

Each of the witnesses relied upon what he believed to be a translation of the paper in Italian to the deceased by her son. The son is now dead and the court is wholly without information as to what in fact the son said to deceased. Since neither witness knew the Italian tongue neither is in a position to say that the son read to deceased any single idea contained in the propounded paper. While the witnesses purported to testify to deceased's understanding of what went on, it is plain that in saying this they are assuming that the son read the complete paper to his mother, that he was capable of translating its terms understandingly to her and that his reading (in Italian) was substantially correct.

On the whole record the court finds that deceased was completely illiterate. She was unable to sign even her name. The propounded paper is subscribed by a cross mark only. Her subscription does not mean that she read the paper for we know that she could not read at all. The draftsman's reading of the

paper in English gave her no knowledge of the contents since in a realistic sense she was wholly deaf to English. Her sight and hearing might as well have been absent so far as knowledge of the *English* text is concerned. And so far as her knowledge acquired from the words of her son is concerned we know nothing.

"A party who offers an instrument for probate as a will must show satisfactorily that it is the will of the alleged testator, and upon this question he has the burden of proof. If he fails to satisfy the court that the instrument speaks the language and contains the will of the testator, probate must be refused. The laws in reference to the distribution of the estates of persons dying intestate are founded upon principles of public policy and justice, and must regulate the transmission of property unless a person before death has in the mode prescribed by law himself provided how his property after his death shall be disposed of. As said by Judge Davies, in *Delafield* v. *Parrish* (25 N. Y. 9, 35): ' It is not the duty of the court to strain after probate, nor in any case to grant it where grave doubts remain unremoved and great difficulties oppose themselves to so doing.' And this was substantially the language of Lord Brougham, in *Santon* v. *Williams* (2 Curt. 530). Ordinarily, when a testator subscribes and executes a will in the mode required by law, the fact of such subscription and execution are sufficient proof that the instrument speaks his language and expresses his will; but when a testator is deaf and dumb, or unable to read or write and speak, something more is demanded. There must then not only be proof of the factum of the will, *but also that the mind of the testator accompanied the act, and that the instrument executed speaks his language and really expresses his will.*" (*Rollwagen* v. *Rollwagen,* 63 N. Y. 504–517. Italics supplied.)

Here the propounded paper contains language not suitable for a will but commonly found in deeds to real property. It is of the utmost importance to know whether deceased understood what the text of the paper meant in its dispositions of her property. On that subject we are wholly without proof. As the paper is now drawn it would operate if valid to disinherit the only descendent of deceased, a grandchild, and to give deceased's entire estate to a stranger to her in blood. Such a result would be gravely unjust and as said in the excerpt already quoted it is not the duty of this court to strain after probate in such a situation. The comment of MILLER, J. (later a Judge of the Court of Appeals) in *Matter of Bedell* (107 App. Div. 284,

286) is here pertinent. He there said: " The testator evidently knew that he was executing a will and thought he knew its contents, and we must assume that something was read to him; but there is no proof that the instrument offered was ever read to him, that he knew its contents, or that it expressed his intention." In the cited case the propounded paper was denied probate. To like effect see *Matter of Regan* (206 App. Div. 403, 406) where the court rejected a propounded paper because of lack of showing that knowledge of its contents was possessed by an illiterate.

This court is not satisfied with the proof presented that deceased had any knowledge whatever of the contents of the paper to which she affixed her mark. It has not been proved to the court's satisfaction that she either knew of or adopted as her own the terms of the paper. In consequence probate to the propounded paper is refused.

Submit, on notice, decree accordingly.