598 P.2d 644

**Tony E. MATNEY, Plaintiff-Respondent,**

v.

**Roger EVANS, Individually and as father and next friend of Robert T. Evans, a minor, Defendants-Petitioners.**

No. 3909.

Court of Appeals of New Mexico.

May 8, 1979.

Rehearing Denied May 22, 1979.

John A. Klecan, James T. Roach, Klecan & Roach, P.A., Albuquerque, for defendants-petitioners.

Paul S. Wainwright, Robinson, Stevens & Wainwright, Albuquerque, for plaintiff-respondent.

## OPINION

WOOD, Chief Judge.

A car driven by Robert Evans struck a bicycle being ridden by plaintiff. Summary judgments as to the liability of defendants were entered in favor of plaintiff. Defendants then raised issues concerning a guardian for Robert and an asserted indispensable party. We granted defendants' application for an interlocutory appeal. We consider (1) the propriety of the summary judgments; (2) the guardianship issue; and (3) the United States as an indispensable party.

*Propriety of the Summary Judgments*

In October, 1977, Judge Rozier Sanchez granted summary judgment "finding Roger Evans liable for the negligent acts of his son, Robert T. Evans, based on the Family Purpose Doctrine * * *." No issue is raised as to the propriety of this summary judgment.

In November, 1977, Judge Rozier Sanchez granted summary judgment on the basis that "Robert T. Evans was negligent and his negligence caused the injuries received by Plaintiff" and that "Plaintiff was free from any negligence concerning the accident * * *."

Attorney Eugene E. Klecan criticized Judge Sanchez's handling of the case; Judge Sanchez recused himself. The case was assigned to Judge Maloney.

Defendants moved for reconsideration of the summary judgments. The motion for reconsideration was heard in December, 1978. Judge Maloney affirmed the summary judgments previously granted by Judge Sanchez.

Defendants claim that Judge Sanchez incorrectly placed the burden of proof upon defendants in connection with the summary judgment motions. Defendants rely on language in a letter from Judge Sanchez which states, in regard to liability and contributory negligence, that nothing in the depositions supported defendants' theory. Defendants then assert that they had no burden under *Fidelity Nat. Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 583 P.2d 470 (1978).

■ *Fidelity National Bank*, supra, holds that plaintiff's burden on summary judgment includes the burden of showing no material issues of fact existed as to defendant's affirmative defenses. In order to make a prima facie showing for summary judgment in this case, plaintiff was required to make a prima facie showing that defendants were negligent and, to meet the affirmative defense, that plaintiff was not contributorily negligent.

The transcript of the summary judgment hearing shows that plaintiff understood his burden, undertook to, and met his burden. The comments in Judge Sanchez's letter state no more than that defendants failed to show there was a disputed material issue of fact which would defeat the showing which entitled plaintiff to summary judgment.

Defendants assert there were factual issues as to whether Robert was negligent, whether any negligence of Robert was the proximate cause of the accident, and whether plaintiff was contributorily negligent. We disagree.

Yale is a north-south street. Kathryn comes into Yale from the east. Entry into Yale from Kathryn is controlled by a stop sign. Robert was driving north on Yale in the right-hand lane when his car collided with plaintiff's bicycle somewhere in the vicinity of the Yale-Kathryn intersection.

Plaintiff's showing, from the depositions, was that plaintiff was traveling north on Yale, in the curb lane, on a bicycle equipped with a front light, powered by a generator affixed to the rear fork. The investigating officers could not remember whether there was a generator-powered light to the rear, but the showing is uncontradicted that reflectors were attached to the pedals of the bicycle and another reflector was attached to the back of the bicycle seat.

The investigating officers were of the opinion that the bicycle was struck from the rear. They explained that the rear bicycle wheel, viewed vertically, had a large indentation consistent with the tire of the wheel being struck by the bumper of a car, pushing the rim of the wheel inwards toward the sprocket. One officer illustrated with a diagram. The officer also explained their opinions on the basis of the path of plaintiff's body—it crossed the hood, hit the right windshield and passed over the top and length of the car.

Robert observed nothing in his lane of travel until immediately before the collision he saw a flash of chrome. The accident happened around 11:00 p. m. During the course of the evening Robert had consumed two to three beers and admitted to being tipsy. There is testimony that the beer would have dulled Robert's perceptions.

Plaintiff's showing was that plaintiff was traveling north on Yale on a bicycle, equipped with a light and reflectors, in the proper lane of travel; that Robert never saw the bicycle in time to avoid the collision. Plaintiff made a prima facie showing that he was not contributorily negligent, that Robert was negligent in failing to keep a proper lookout and that this negligence was the proximate cause of the accident.

Defendants' theory of contributory negligence was that plaintiff entered Yale from Kathryn, that plaintiff either did not stop at the stop sign or else pulled into the path of Robert's car. The defense argument is based on gouge marks at the accident scene and on an affidavit.

After the accident, there was a gouge mark in the pavement. This gouge mark was located in the northeast quadrant of the intersection. The gouge mark was made by a pedal of the bicycle. The gouge mark was a straight line three feet west of what would have been the east curb of Yale if that curb had extended across Kathryn. The south end of the gouge mark was ten feet south, and the north end of the gauge mark was six feet south of what would have been the north curb of Kathryn if that curb had been extended across Yale. The south end of the gouge mark was approximately seven feet north of a projected centerline of Kathryn.

The point of impact was necessarily south of the gouge mark because it was the impact that knocked the bicycle down with the

resulting gouge mark. The officers placed the point of impact between four and thirty feet south of the south end of the gouge mark.

Defendants contend that a point of impact south of the gouge mark does not negate their contention that plaintiff entered Yale in the path of Robert's car. We agree; the physical location of the gouge mark and the actual point of impact indicate nothing about defendants' theory. Defendants assert that, consistent with *Fidelity National Bank v. Tommy L. Goff, Inc.*, supra, plaintiff had to negate defendants' theory. We disagree.

■■ *Fidelity National Bank* reaffirms that "once the movant has made a prima facie showing that it is entitled to summary judgment, the burden shifts to the party opposing the motion to show that a genuine issue as to a material fact remains." Plaintiff was not required to demonstrate beyond all possibility that no genuine issue of fact existed. Plaintiff was not required to show there was no possibility that he entered Yale into the path of the car. Plaintiff did show that there was nothing in the physical facts that caused the investigating officers to believe that plaintiff was westbound on Kathryn. Plaintiff's showing was a prima facie showing entitling him to summary judgment; defendants had the burden of elevating their speculation about entry into the path of the car into a fact issue. Defendants' arguments concerning gouge marks and point of impact did not meet this burden.

■ Defendants assert they met their burden by an affidavit they submitted. The affidavit was of Joseph A. Holland, who states that he is an accident reconstruction expert. This affidavit affirms the physical location of the gouge marks and states that damage to the bicycle "is not consistent with the bike being struck from the rear. Rather, the bike was at an angle to the car at impact." As we have pointed out, the location of the gouge marks adds nothing to defendant's theory. Holland does not explain his view concerning the striking of the bicycle. Holland concludes:

"Based upon my investigation and analysis, it is my opinion that the bicycle pulled out directly in front of the oncoming vehicle." We agree with Judge Sanchez that the affidavit was no more than unsupported conclusions that were not entitled to consideration. Rule of Civ.Proc. 56(e) requires affidavits to set forth facts "as would be admissible in evidence * * *." See *Galvan v. City of Albuquerque*, 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973); *Smith v. Klebanoff*, 84 N.M. 50, 499 P.2d 368 (Ct.App.1972). The Holland affidavit did not comply with Rule of Civ.Proc. 56(e). ·

■■ Defendants also assert that summary judgment was improper because the trial court acted as a fact finder rather than determine whether the material facts were undisputed. See *Fresquez v. Southwestern Ind. Con. & Riggers, Inc.*, 89 N.M. 525, 554 P.2d 986 (Ct.App.1976). Defendants' argument is based on the fact that plaintiff brought the bicycle to the summary judgment hearing, invited Judge Sanchez to view it, and argued that "the physical evidence from this bicycle * * * shows there can be no dispute that the bicycle was struck from the rear." The record does not show whether the trial court viewed the bicycle; we assume it did. However, it does not follow from this "view" that Judge Sanchez was a "fact finder" at the summary judgment hearing. The letter from Judge Sanchez, announcing his decision, refers only to the depositions, it does not indicate the bicycle "view" played any part in the decision.

We cannot say that the bicycle "view" resulted in Judge Sanchez finding any fact, or that the "view" even suggested a disputed factual issue. The bicycle is not before us for view or review. Inasmuch as the defendants are relying on the bicycle in arguing the impropriety of the summary judgment, it was defendants' burden to see that the record before us was adequate to review the alleged impropriety. *State v. Duran*, 91 N.M. 756, 581 P.2d 19 (1978). Having failed to present the bicycle, defendants' bicycle view argument cannot be considered.

Defendants also present a scattershot of arguments that we do not answer individually. These arguments are to the effect that Judge Sanchez drew inferences from the depositions and decided factual questions. We have reviewed the depositions that go to the liability question. These depositions show that plaintiff made a prima facie showing that Robert was negligent, that this negligence was the cause of the accident, and that plaintiff was not contributorially negligent. Defendants had the burden of showing there was a material issue of fact and did not meet this burden. The summary judgments were properly granted.

### The Guardianship Issue

Robert is a minor. The original complaint sued him directly. The amended complaint sued Robert through Roger, as father and next friend of Robert. After proceedings by writ of mandamus, the Supreme Court directed that "the next friend be appointed guardian ad litem so that the trial can proceed." Pursuant to the Supreme Court order, Judge Maloney appointed the father as guardian ad litem for Robert, finding that Roger had been "acting as father and next friend throughout these proceedings * * *." The guardian was appointed on October 5, 1978.

■ Defendant contends that the summary judgments entered against Robert prior to the appointment of the guardian ad litem were void because there was no jurisdiction in the trial court prior to the appointment. We do not discuss whether a judgment against a minor is void if the minor does not have a guardian. Nor do we discuss whether the Supreme Court decided such a question by its order. Such discussion is unnecessary.

Judge Maloney reconsidered the summary judgments and affirmed them on December 7, 1978. This was after the appointment of the guardian ad litem. Any defect in Judge Sanchez's summary judgments, because of lack of a guardian for Robert, was cured when the summary judgments were affirmed when Robert had a guardian. Stated another way, there was no defect in the parties when Judge Maloney affirmed the summary judgments; the affirmed summary judgments are valid regardless of any asserted defect in the parties before Judge Sanchez.

### United States as an Indispensable Party

The amended complaint states:

6. As a result of the injuries, the Plaintiff has received and in the future will continue to receive medical and hospital care and treatment furnished by the United States of America. The plaintiff for the sole use and benefit of the United States of America under the provisions of 42 U.S.C. 2651–2653, and with its express consent, asserts a claim for the reasonable value of said past and future care and treatment.

Defendant moved to dismiss the complaint alleging that the United States was an indispensable party. Denial of this motion was not error.

Defendants' indispensable party claim is based entirely on New Mexico decisions involving insurance companies. Defendants overlook the fact that a federal statute is involved. Compare *White v. Sutherland*, 92 N.M. 187, 585 P.2d 331 (Ct.App.1978).

■ The federal statute, 42 U.S.C.A. (1973) § 2651, establishes an independent right of the United States to recover and states procedures by which to seek recovery. The procedures are not mandatory; an action, as here, for the sole use and benefit of the United States, is not excluded by the statute. The absence of the United States as a party in a "sole use and benefit" action does not subject the action to dismissal for lack of an indispensable party. *Albright v. R. J. Reynolds Tobacco Company*, 350 F.Supp. 341 (W.D.Pa.1972); *Palmer v. Sterling Drugs, Inc.*, 343 F.Supp. 692 (E.D.Pa.1972).

The summary judgments are affirmed. The order denying the motion to dismiss for asserted lack of an indispensable party is affirmed. The cause is remanded for trial on the issue of damages.

IT IS SO ORDERED.

LOPEZ, and WALTERS, JJ., concur.