658 P.2d 1134 (1982)
99 N.M. 407
Mardell LENT, Plaintiff-Appellant,
v.
EMPLOYMENT SECURITY COMMISSION OF the STATE OF NEW MEXICO and Fireman's Fund Insurance Company and Travelers Indemnity, Defendants-Appellees.
No. 5642.
Court of Appeals of New Mexico.
September 28, 1982.
Rehearing Denied October 13, 1982.
Certiorari Quashed January 27, 1983.
*1135 Narciso Garcia, Jr., Toulouse, Toulouse & Garcia, Albuquerque, for plaintiff-appellant.
Louise Gibson, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendant-appellee Fireman's Fund Ins. Co.
Margo J. McCormick, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendants-appellees Employment Sec. Com'n & Travelers Indem.

*1136 OPINION
WOOD, Judge.
Plaintiff's claim for worker's compensation alleged that she suffered a compensable accidental injury, § 52-1-28, N.M.S.A. 1978; that her injury was a psychological injury, Schober v. Mountain Bell Tel., 96 N.M. 376, 630 P.2d 1231 (Ct.App. 1980), which began to manifest itself several months prior to the termination of her employment. The compensation claim was filed approximately 22 months after she was discharged from her employment. The trial court granted summary judgment in favor of defendants on the basis that the compensation claim was not timely filed. Section 52-1-31, N.M.S.A. 1978. Plaintiff appeals. We discuss: (1) when the limitation period began to run; (2) procedural posture of the case; (3) mental capacity; (4) asserted factual issues; (5) excuse for late filing; and (6) tolling of the limitation period after it began to run.

When the Limitation Period Began
When it is reasonably apparent, or should be reasonably apparent, that a worker has an injury on account of which she is entitled to compensation and the employer fails to pay compensation to which the worker is entitled, the worker has a right to file a compensation claim, and the limitation period of § 52-1-31, supra, begins to run from that date. Jowers v. Corey's Plumbing & Heating, 74 N.M. 555, 395 P.2d 827 (1964). As Noland v. Young Drilling Company, 79 N.M. 444, 444 P.2d 771 (Ct. App. 1968), explains: "the failure to pay compensation when it becomes payable starts the period of limitations running."
Plaintiff does not attack the validity of this general rule. This panel recognizes that Montano v. ABF Freight System, (Ct. App.) No. 5218, filed April 20, 1982 (21 St.B.Bull. No. 31) has caused uncertainty as to the continued validity of this long-standing general rule. We note that the Supreme Court granted certiorari in Montano on June 15, 1982, and until Montano is a final decision, we decline to follow it.
Plaintiff contends that the limitation period may begin to run at different times, depending on the degree of disability. In the trial court, plaintiff asserted that even though the limitation period may have run for a partial disability, that a new limitation period began when plaintiff became totally disabled in June, 1980. Such a contention is incorrect. As Noland v. Young Drilling Company, supra, points out, when it is apparent, or should be apparent, that a worker has a compensable disability and the employer refuses or fails to pay compensation, the limitation period begins to run: "There is nothing in the [compensation] act ... which indicates that the running of the statute may be delayed until a more serious disability is ascertainable." See Cordova v. Union Banking Company, 80 N.M. 241, 453 P.2d 761 (Ct.App. 1969).
Section 52-1-31, supra, states: "This one year period of limitations shall be tolled during the time a workman remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one year."
The compensation claim alleges a partial disability which manifested itself several months prior to the date plaintiff was discharged. The deposition testimony shows that plaintiff knew about the asserted partial disability; she gave oral notice of a compensation claim more than one month prior to her discharge. She was discharged on June 19, 1979; the limitation period began to run, under the general rule, on June 20, 1979. Her compensation claim was filed April 24, 1981. Plaintiff seeks to avoid application of the general rule; avoidance is sought on the basis of her mental condition.

Procedural Posture
Plaintiff seems to contend that defendants' showing, in the trial court, was insufficient for a summary judgment. This contention misappraises the two procedural burdens involved.
First, defendants, seeking summary judgment, had the initial burden of a prima facie showing that they were entitled *1137 to summary judgment. Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972). Defendants made a prima facie showing that plaintiff's claim was barred by the time limitation in § 52-1-31, supra. Once defendants made this showing, plaintiff had the burden of showing there was an issue defeating summary judgment. That issue must be one of a genuine material fact. Stringer v. Dudoich, 92 N.M. 98, 583 P.2d 462 (1978); Goodman v. Brock, supra.
Second, defendants, seeking summary judgment, had the benefit of a presumption that plaintiff was mentally competent. Matter of Estate of Head, 94 N.M. 656, 615 P.2d 271 (Ct.App. 1980) states:
The presumption is in favor of competency. To show the contrary, the burden of proof rests on him who so alleges... .
The reason the presumption of competency exists is due to the fact that mental incompetence is a condition of degree. It may vary from idiocy to almost ordinary mental strength.
See also, Matter of Estate of Taggart, 95 N.M. 117, 619 P.2d 562 (Ct.App. 1980). We are not concerned here with the quantum of proof, nor with the effect of Evidence Rule 301, either before or after its amendment in 1980, see Judicial Pamphlet 10, N.M.S.A. 1978 (1980 Cum.Supp.), upon prior decisions. Compare Evidence Rule 301 with McElhinney v. Kelly, 67 N.M. 399, 356 P.2d 113 (1960) and In re Owen's Estate, 63 N.M. 263, 316 P.2d 1077 (1957). Plaintiff, opposing summary judgment on the basis of her mental capacity, had the burden of showing a genuine factual issue as to her mental capacity and that such an issue was a material issue. Evidence Rule 301, both prior to and after the 1980 amendment, supra; In re Riedlinger's Will, 39 N.M. 168, 42 P.2d 1113 (1935).
Under both the summary judgment requirement and the requirements for opposing a presumption, our concern is not with defendants' showing; defendants made a prima facie showing for summary judgment. Our concern is whether plaintiff's showing was sufficient to defeat summary judgment.

Mental Capacity
In asserting that factual and legal issues exist as to the applicability of the time to sue requirements of § 52-1-31, supra, plaintiff claims that during pertinent times she lacked mental capacity: "It was not until the spring of 1981 that I was mentally competent to protect and pursue my legal rights."
Our concern, in this issue, is the meaning of mental capacity when the asserted lack of capacity is relied on to defeat the application of a time to sue provision. We are not concerned with incompetency to stand trial in a criminal proceeding, or "insanity" at the time of commission of a criminal offense. See R.Crim.Proc. 35, N.M.S.A. 1978 (1982 Cum.Supp.). Nor are we concerned with the "mental disorder" required by the Mental Health Code for commitments. Section 43-1-3(N), N.M.S.A. 1978. Further, we are not concerned with a medical diagnosis of whether a person is psychotic or has a personality disorder. See State v. Velasquez, 76 N.M. 49, 412 P.2d 4 (1966), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966).
"The test of mental capacity is whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the person is engaged." Matter of Estate of Head, supra. In connection with the assertion or non-assertion of legal rights, Annot., 9 A.L.R.2d 964 at 965 (1950), states the disability must be such that the person is "unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." See also, Adkins v. Nabors Alaska Drilling, Inc., 609 P.2d 15 (Alaska 1980). The test is similar to the test for determining a person's mental capacity to make a will. McElhinney v. Kelly, supra. The test is also similar to the test for determining a person's mental capacity to make a valid confession. State v. Lujan, 87 N.M. 400, 534 P.2d 1112 (1975), cert. denied, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 400 (1975).
To defeat the motion for summary judgment on the basis of a genuine factual *1138 issue, plaintiff had the burden of showing that a factual issue existed as to whether plaintiff was capable of understanding, in a reasonable manner, her legal right to claim compensation and the effect of failure to make a timely claim.

Asserted Factual Issues
Plaintiff was discharged in June, 1979; she suffered a severe episode of depression in June, 1980 and, in that month, attempted suicide. Plaintiff contends there is a genuine factual issue as to her mental capacity from an unspecified period of time prior to her discharge until June, 1980. This contention has three parts: (a) mental capacity up to the date of discharge; (b) mental capacity from discharge to June, 1980; and (c) knowledge of injury from discharge to June, 1980.

(a) Mental capacity to date of discharge.
Plaintiff points out that for some months prior to discharge she suffered from depression and occasional hysteria, that she was unable to function at her job and the failure to perform her job was the reason she was discharged. She points out that she was under the care of her family doctor, but not a psychiatrist, during this time period. None of these items address the issue of her capacity to understand her legal right to claim compensation.
In opposing summary judgment, plaintiff relied on her own affidavit and the affidavit of a psychiatrist who saw plaintiff for the first time after the suicide attempt. Neither affidavit addresses plaintiff's mental capacity prior to or at the time of discharge.
The showing as to mental capacity up to the time of discharge is undisputed. Plaintiff admitted that prior to discharge she gave oral notice that she intended to file a compensation claim. The family doctor treated plaintiff for a variety of complaints, beginning in 1975. The physician noted depression beginning in November, 1977, and stress at work beginning in May, 1978. The physician's opinion was that plaintiff was "alert, oriented", her thinking process was not "inappropriate", "she clearly perceived reality appropriately" and "at no time did I feel that she was out of contact with reality, that her thought process was grossly disturbed." The time of the physician's opinion was through June 7, 1979.
Plaintiff did not meet her burden of showing a genuine factual issue as to her mental capacity up to the time of her discharge in June, 1979.

(b) Mental capacity from discharge to June, 1980.
In contending there was a factual issue as to her mental capacity during this time period, plaintiff relies on her mental condition up to the time of discharge plus additional mental stress resulting from the discharge. The psychiatrist testified in his deposition that on June 10, 1980 plaintiff was seriously suicidal, that the most significant event that deepened plaintiff's depression was plaintiff's discharge.
There was extensive questioning of the psychiatrist as to the information on which the psychiatrist based his opinions. See Evidence Rules 703 and 705, N.M.S.A. 1978. The psychiatrist had not reviewed plaintiff's medical records in any detail; his opinions were based primarily on some 300 hours of counseling with plaintiff subsequent to the June 10, 1980 episode and information revealed by plaintiff at the counseling. The psychiatrist recognized that documentation of plaintiff's medical history might influence his opinion. The psychiatrist deposed that plaintiff was incompetent on June 10, 1980, and that there had been periods of competency and incompetency subsequent to that date. The psychiatrist also deposed that plaintiff's condition prior to June 10, 1980 was unknown, that the lawyers had more information on this than the psychiatrist. We are not concerned with factual issues of causation or the extent of disability but with competency. The psychiatrist's deposition raised no factual issue as to plaintiff's competency between the discharge and June 10, 1980. The psychiatrist's affidavit is consistent *1139 with his deposition. The opinion in the affidavit refers to incapacity beginning in June, 1980.
Plaintiff's affidavit refers to her alleged on-the-job psychological injury, her depression, her discharge, her deepening depression subsequent to the discharge and her suicide attempt in June, 1980. Plaintiff's affidavit states the conclusion that plaintiff was not competent to protect or pursue her legal rights until the spring of 1981. Assuming, but not deciding, that plaintiff was qualified to state a conclusion as to her mental competency, the facts referred to in the affidavit provide no basis for the affidavit's conclusion as to competency; specifically, plaintiff's perceptions as a non-expert do not support her opinion concerning competency. Evidence Rule 701, N.M.S.A. 1978; see Matney v. Evans, 93 N.M. 182, 598 P.2d 644 (Ct.App. 1979). Further, plaintiff's affidavit does not suggest incompetency prior to June, 1980.
Plaintiff did not meet her burden of showing a genuine factual issue as to her mental capacity from her discharge to June, 1980.

(c) Knowledge of injury from discharge to June, 1980.
Plaintiff's brief states:
If, as the Defendants maintain, Mardell Lent was competent at the time of her discharge, then we maintain that her injury was latent until she required psychiatric treatment in June, 1980. If that is the case, then she filed her compensation claim well within one year of the date on which she knew or should have known of her injury.
Plaintiff recognizes that this latent injury contention depends upon whether there is a factual issue as to when she knew or should have known of her injury. This, in turn, depends upon her mental capacity to "know". Her argument for latency has two parts.
First, plaintiff asserts that her own testimony about oral notice concerning a compensation claim should be disregarded, and that until June, 1980 "there is little evidence that the Plaintiff was aware she had sustained injuries which would be compensated under Workmen's Compensation." Our answer is that plaintiff deposed as to her knowledge of a psychological injury prior to her discharge. The deposition testimony is substantial; it is also uncontradicted.
Second, plaintiff contends she filed her claim as soon as she "was capable of recognizing the extent of her injury and of taking steps to protect her legal rights". Our answer is that there is no factual issue as to her mental competency prior to June 10, 1980, and that knowledge of injury, not knowledge of the extent of the injury, is the basis for starting the running of the limitation period. See discussion under the first issue in this opinion.
Plaintiff did not meet her burden of showing a genuine factual issue as to when she knew about her alleged injury.

Excuse for Late Filing
On the assumption that there were genuine factual issues as to plaintiff's mental capacity, plaintiff claims that the limitation period of § 52-1-31, supra, never began to run; alternatively, that the limitation period did not begin to run on June 10, 1979. Under this assumption, the question is whether a factual issue as to mental capacity is a material issue; materiality is a legal issue. We have held there was no genuine factual issue as to her mental capacity up to June 10, 1980; thus, there is no factual predicate for the legal contentions identified in this issue. However, we answer the plaintiff's legal contentions as an alternative decisional ground. If it should be determined that we are incorrect, and that there are genuine factual issues as to plaintiff's mental capacity, those factual issues are not material because the legal contentions are without merit. The legal contentions involve (a) statutory provisions and (b) principle and policy.

(a) Statutory provisions.
Annot., 9 A.L.R.2d 964, supra, states:

*1140 As a general rule, unless some saving clause or exception therein expressly provides, persons of unsound mind are not excepted from the running of the statute of limitations. It should be noted, however, that in most jurisdictions the limitation statutes contain exceptions in favor of persons mentally incompetent.
Section 37-1-10, N.M.S.A. 1978 states:
The times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors and incapacitated persons, be extended so that they shall have one year from and after the termination of such incapacity within which to commence said actions.
Because § 37-1-10, supra, refers to incapacitated persons, plaintiff contends this statute should extend the time for a mentally incompetent person to file a compensation claim. This argument disregards the wording of § 37-1-10, supra, which applies to time limitations of "this chapter". The time limitation for filing a compensation claim is not part of "this chapter".
Section 37-1-17, N.M.S.A. 1978 states:
None of the preceding provisions of this chapter shall apply to any action or suit which, by any particular statute of this state, is limited to be commenced within a different time, nor shall this chapter be construed to repeal any existing statute of the state which provides a limitation of any action; but in such cases the limitation shall be as provided by such statutes.
Under § 37-1-17, supra, the time limitations of the compensation statute apply; § 37-1-10, supra, does not apply to a compensation claim. Natseway v. Jojola, 56 N.M. 793, 251 P.2d 274 (1952); Noriega v. City of Albuquerque, 86 N.M. 294, 523 P.2d 29 (Ct.App. 1974); see Ortega v. Shube, 93 N.M. 584, 603 P.2d 323 (Ct.App. 1979).
"The remedy provided by the [Compensation] act being complete in itself ... the period of limitation for beginning suit which is named in the act controls, to the exclusion of the general act of limitations with respect to the time within which actions generally may be commenced." Swallows v. City of Albuquerque, 61 N.M. 265, 298 P.2d 945 (1956).
There being no genuine factual issue as to a latent injury, no issue under § 52-1-36, N.M.S.A. 1978 and no issue under § 52-1-59, N.M.S.A. 1978, the time period for filing a compensation claim is stated in § 52-1-31, supra.
Plaintiff does not contend that an extension for lack of mental capacity is stated in § 52-1-31, supra. Her argument is that the New Mexico appellate courts have never specifically held that § 52-1-31, supra, does not authorize such an extension and § 52-1-31, supra, should be construed to provide such an extension. Our answer is that § 52-1-31, supra, unambiguously states a time limitation and provides no exceptions to the limitation.
Considering the claim of a minor dependent, Sanchez v. Bernalillo County, 57 N.M. 217, 257 P.2d 909 (1953), held: "There is no ... provision in our [Compensation] Act which saves the rights of dependents under disability from the running of limitations... ." Selgado v. New Mexico State Highway Department, 66 N.M. 369, 348 P.2d 487 (1960), also considered the limitation period for a minor dependent. Selgado states that the compensation statute "contains no exception tolling the limitation by reason of minority or incompetency." (Our emphasis.) "[T]he courts cannot provide a saving clause or create an exception where the statute contains none." Natseway v. Jojola, supra.
No statutory provision extends, for lack of mental capacity, the time for filing a compensation claim.

(b) Principle and policy.
Plaintiff contends this Court should establish, judicially, an exception excusing a late compensation claim because of mental incompetence. She asserts that the exception should be established because of a "mental competency principle" that a plaintiff's rights should be vindicated. See Brooks v. Southern Pacific Company, 105 Ariz. 442, 466 P.2d 736 (1970). She also *1141 asserts that the exception should be established because the compensation statute should be liberally construed in favor of the worker.
Plaintiff relies on 3 Larson's Workmen's Compensation Law § 78.46 (1976) which reads: "Mental or physical incompetence is a common excuse for lateness in filing claim, in the absence of appointment of a conservator or guardian. For this purpose extreme illiteracy or a `beclouded mind' have been brought within the reach of the mental incompetency principle." This "principle" is not, however, limited to compensation law. Larson, supra, § 78.49 states: "Many of the questions in this area depend on state rules applicable to limitations generally, and present no distinctive issue of compensation law... ."
Instead of a special "mental competency principle", we look to the principle of limitations generally.
[T]he legislature of New Mexico had in mind the general rule that exceptions contained in statutes of limitations in favor of particular persons or classes are to be construed with strictness, and that implied or equitable exceptions are not to be grafted upon the statute where the legislature has not made the exception in express words in the statute.
Musgrave v. McManus, 24 N.M. 227, 173 P. 196 (1918). "Although the law favors the right of action rather than the right of limitation ... exceptions to statutes of limitation must be construed strictly... ." Slade v. Slade, 81 N.M. 462, 468 P.2d 627 (1970).
Plaintiff's "liberal construction" contention is answered in Sanchez v. Bernalillo County, supra:
[I]t is not the province of the court, but of the legislature, to make changes in the provisions of statute law. Where the law-making body has specified clearly who shall be entitled to compensation benefits and under what circumstances, the court should not alter the conditions required to obtain such benefits.
A rule of liberal construction does not permit us to disregard statutory language. Selgado v. New Mexico State Highway Department, supra.
Even if there were a genuine factual issue as to plaintiff's mental capacity, that issue was not a material issue because there is no statutory provision excluding mental incompetency from the running of the limitation period. The limitation period began to run in this case on June 20, 1979.
Tolling After the Time Limitation Began to Run
It is not disputed that plaintiff lacked mental capacity on June 10, 1980. The one year limitation period would not have expired until June 20, 1980. Plaintiff claims the limitation period was tolled on June 10, 1980 and did not begin to run again until she regained mental capacity. Plaintiff's position is that she must have been mentally competent for ten days between June 10, 1980 and April 24, 1981, the date she filed the compensation claim, for the limitation period to have expired.
The psychiatrist's deposition refers to periods of competency and incompetency, but no effort was made to date or identify such periods. The psychiatrist's affidavit states that plaintiff was not mentally competent to protect her legal rights until the month of January, 1981. The psychiatrist's affidavit raises no genuine factual issue as to competency for ten days between June 10, 1980 and April 24, 1981.
Plaintiff's affidavit concludes that she was not mentally competent to protect and pursue her legal rights until "the spring of 1981." Under the procedural posture of this case, plaintiff had the burden of showing a genuine factual issue. Assuming, but not deciding, that plaintiff's conclusion may be considered, a claim of competency in the spring of 1981 did not fulfill plaintiff's burden to show a factual issue as to ten days of competency between the spring of 1981 and April 24, 1981.
Even if there were a genuine factual issue as to a ten-day period of competency between June 10, 1980 and April 24, 1981, that issue was not material.
*1142 In re Matson's Estate, 50 N.M. 155, 173 P.2d 484 (1946), states: "[W]hen statutes of limitation have begun to run, a disability to sue does not suspend the running of the statute, in the absence of a specific statute enacted for that purpose." We do not rely on the phrase "disability to sue", thus avoiding the question of whether a person lacking mental capacity is "disabled" from bringing a suit in that person's name. See Annot., 71 A.L.R.2d 1247 (1960).
Once the limitation period begins to run, the running is not suspended unless a statute so provides. Field v. Turner, 56 N.M. 31, 239 P.2d 723 (1952) and Buss v. Kemp Lumber Co., 23 N.M. 567, 170 P. 54 (1918). Our statutes do not provide for the tolling of the limitation period for filing a compensation claim once the time period begins to run. The limitation period, which began on June 20, 1979, was not tolled on June 10, 1980. Plaintiff's periods of mental capacity and incompetency subsequent to June 10, 1980 are not material. The limitation period had expired when the compensation claim was filed April 24, 1981.
The summary judgment is affirmed. This being an unsuccessful appeal by the worker, no costs are awarded. Section 52-1-39, N.M.S.A. 1978.
IT IS SO ORDERED.
LOPEZ and NEAL, JJ., concur.